T. L. BUCKOUT v. FRANCIS P. SWIFT, MARGARET SWIFT, AND JOHN LOWELL.

```
27  433
80  248
27  433
91  381
27  433
92  79
27  433
100  9
```

ISSUES OF FACT RAISED BY ANSWER.—Where there are no findings of fact in an action tried by the Court, all the issues of fact raised by the answer are deemed to have been found in favor of the party who recovers judgment.

REMOVAL OF A HOUSE FROM THE FREEHOLD.—The severance and removal of a house from the freehold changes the character of the house from real to personal property, whether the severance is by the act of God or of man.

MORTGAGEE'S RIGHT TO AN INJUNCTION.—The mortgagee of a lot on which a house is standing, cannot enjoin the mortgagor or his assigns from removing the house from the lot, except upon proof that the lot without the house will be an inadequate security for the mortgage debt.

SAME.—The severance and removal of a house from land covered by a mortgage withdraws the house from the operation of the mortgage lien; and after the removal the mortgagor or his assignee has a right to sell the house, and the purchaser may convert it to his own use.

APPEAL from the District Court, Sixth Judicial District, City and County of Sacramento.

The facts are stated in the opinion of the Court.

*George Cadwalader*, for Appellant.

The Court erred in dismissing plaintiff's bill as to respondent, Lowell. The refusal of the injunction, however, made it impossible for the Court, in accordance with its ruling on the motion for an injunction, to do otherwise than dismiss the bill as to the respondent Lowell.

We, however, contend that it was a gross act of spoliation on the part of Swift and Lowell, the one to sell and the other to buy the house as it stood in the street.

We cite generally the following authorities to show that in no event could the Court below have been right: "Things personal in their nature, but fitted and prepared to be used with real estate, and essential to its beneficial enjoyment, pass with the realty." (1 Hilliard on Real Property, p. 26.) And pass by mortgage without being specially named. (Ib. 28.) A grant of land carries houses with it. (2 Washburne on Real Property, p. 625.)

55

*E. B. Crocker*, for Respondent.

By the Court, SHAFTER, J.

On the 4th of October, 1861, Francis P. Swift and his wife, for the purpose of securing the payment of a promissory note made and delivered by him to the plaintiff, mortgaged a lot in the City of Sacramento, on which stood a dwelling house occupied by Swift and his family, and in which they continued to live until .the great flood of 1862, when the house was carried, by the rush of water, into the street a short distance from the mortgaged lot, where it stood when this action was brought. A short time before the commencement of the action, Swift made a contract with the defendant, Lowell, to sell him the house, and Lowell was about to remove it, when the plaintiff brought this action to foreclose the mortgage and to restrain the removal. It was alleged in the complaint that the house, at the date of the mortgage, was affixed to and formed a part of the realty, and that it was chiefly valuable to be used in connection therewith; and that Lowell bought with full notice of all the facts, and that he was destitute of property. The plaintiff obtained upon his complaint, from the County Judge, an order restraining the defendants from selling, taking away, or injuring the house. The order was thereafter dissolved, and an injunction refused by the District Court, upon the complaint alone.

Thereupon, Lowell answered, and, at the trial of the cause, the Court rendered a judgment against the defendant Swift for the amount due on the note, and a decree for the foreclosure of the mortgage and for the sale of the mortgaged property, excepting the house, and as to that, it was ordered and adjudged that the decree should not affect nor authorize its sale; and the Court dismissed the complaint as to Lowell and gave judgment in his favor. The appeal is from the order dissolving the restraining order and refusing to grant an

injunction, and from that part of the decree which dismissed the bill as to the defendant Lowell.

There is a document in the record headed " Statement on appeal." Amongst other things, it contains the pleadings in the action, an agreement that certain facts detailed were " proved," and a medley of evidence given by the witnesses of the respective parties. On this appeal we can make no reference to the evidence, for the purpose of determining whether the judgment is right or wrong. There was no motion for new trial, nor are there any questions arising upon the admissibility of evidence. There are no findings in the case, and we must therefore intend that all the issues of fact raised by Lowell's answer were found in his favor; that is to say, we must intend that the Court found that the lot, without the house " was sufficient security for the debt;" that the defendant " purchased the house of Swift and fully paid him therefor," and that " the defendant is possessed of sufficient means to respond in damages at law." There are other issues raised by special denials in the answer, but the denials are either of immaterial averments or involve mere conclusions of law. It is charged in the complaint that the house was standing upon the lot when the mortgage was made and recorded in October, 1861. That the house was thereafter, in 1862, floated by the flood from off the land into an adjacent street. That the house was the one which Lowell bought, and that the fact of their identity was known to Lowell at the time he purchased. All these averments must be taken as true, for none of them are denied. The facts, which by the statement were " proved," may be laid out of account for they do not bear upon any question which we shall have occasion to discuss.

In view of the facts admitted by the pleadings, it cannot be doubted that the house was originally real estate, and was affected, as such, by the mortgage lien. (2 Wash. R. P. 625.) That point we consider to be so fully established by authority as not to admit of discussion. We shall consider the case under two distinct aspects.

First—Upon the hypothesis that the lien of the mortgage

remained upon the house after it took on the character of personal property by severance and removal from the freehold.

So far as legal effect is concerned, it matters not whether the severance was by the act of God or the act of man. The severance, *proprio vigore,* changed the character of the property from real to personal, irrespective of the means by which it was accomplished. If, while the house was yet upon the land, the mortgagor, or any one claiming under him, had threatened to remove it, and the mortgagee had filed a bill to restrain the removal on the ground of waste, the removal would not have been enjoined, except upon proof, that, as matter of fact, the lot without the house would be an inadequate security. The general rule in equity is, that a mortgagor, in possession, has the right to cut timber on the lands mortgaged, and to do other parallel acts, and a Court of equity will not interfere to restrain him or his assigns in the exercise of that right, until it is made to appear that the cutting, or other like act, is being carried to an extent calculated to render the land an insufficient security for the amount due upon the mortgage. (*King* v. *Smith,* 2 Hare, 239 ; *Brady* v. *Waldrons,* 2 J. Ch. 147 ; *Hampton* v. *Hodges,* 8 Ves. 105 ; *Wright* v. *Atkyns,* 1 Ves. and Beav. 314 ; *Van Wyck* v. *Alliger,* 6 Barb. S. Ct. R. 511; 2 Story's Eq. Sec. 915.) Now, if in the absence of the fact named, a mortgagor would have the right to withdraw timber, growing upon the mortgaged lands, from the lien of the mortgage, by severing and converting it to his own use, why should he or his vendee, in the absence of the same fact, be restrained from converting the property after severance, assuming it to be then subject to the lien ? The questions are identical. Both bear upon a common point, which is as follows : If the mortgagor is allowed to exercise his equitable right of withdrawing timber, etc., from the operation of an admitted lien, will or will not the security be endangered ? No authorities have been cited by counsel bearing directly upon this question, and we have not been able to find any that directly control it; but on the ground of strong and manifest analogy, we consider that both of the cases stated

should be taken as subject to the same rule.   This conclusion disposes of the appeal upon the hypothesis of the appellant that the house was under the lien of the mortgage after its removal from the land.

Second—But we consider that by removal from the land the house was effectually removed from the operation of the mortgage lien.

The mortgage was, by its terms, limited to land as its sole subject matter ; and so long as its terms remained unchanged it could not be made to comprehend anything else.

Again : A building, severed and removed from mortgaged lands, of which lands it formed a part when the mortgage was given, is disencumbered of the lien, substantially on the same principle that a building erected upon the lands after the giving of the mortgage is subjected to the lien.   In the first case, the building is withdrawn from the operation of the mortgage, for the reason that it has ceased to be a thing real; in the other, mere materials are brought under the lien, for the reason that they have become a structure by combination, and the structure has become à thing real by position.   In both cases position is the pivot of judgment.

Again : A mortgagee, as we have already seen, may, under certain circumstances, restrain the mortgagor from cutting and removing timber from the lands covered by the mortgage ; but that doctrine goes upon the very ground that if the timber should be cut, or at least cut and carried away, it would, in its new character of personalty, be withdrawn from the operation of the lien by the sheer force of the change.

Again : If the lien of a mortgage should be held to follow things severed and removed from the freehold, the doctrine would involve a series of notable consequences and investigations.   Minerals removed from mines under mortgage—crops, timber, buildings, and the materials, even, of which the build- ings were constructed, when severed and removed from lands under mortgage, could be pursued under proceedings in fore- closure into the hands of all parties, or, at least, into the hands of all parties taking with notice.   And of what avail would

all this be to mortgagees in the large and in the long run? And under what rule should the lien of the mortgage be enforced? Under that applicable to things real, or the one applicable to things personal? Most probably after the method applicable to things real. But in that event, should the property be sold on view, or without view by the bidders, and in whatsoever hands it might chance to be? If on view, then under what known process could the Sheriff seize, hold, and produce the property at the sale? And if not on view, then could the purchaser call for a writ of assistance if the holder of the property refused to deliver it? And how would it be as to the ordering of redemptions or as to the possibility of any redemption? Would a bill of sale, executed by the Sheriff, pass the title, or would a deed be necessary? and if the latter, then would the things personal be included by intendment in a deed of the *terra firma,* or should they be specially mentioned therein?

But we consider it unnecessary to push the general reasoning further, for the question presented was met and determined in *Codrington* v. *Johnstone,* 1 Beavan, 520. It was held in that case that a mortgagee taking possession, or a receiver appointed on his behalf, is not entitled to crops of the estate, previously severed and consigned by the mortgagor, though not actually received by the assignee.

We hold, then, on principle and on authority, that when the house in question was removed from the land, it was withdrawn from the operation of the mortgage lien, and that the mortgagor had the right to sell it, and that Lowell had the right to buy and to convert it to his own use.

Judgment affirmed.

Mr. Justice SAWYER expressed no opinion.