[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 128 
The contract for the purchase of the wood was made by the defendants Maltby and Houston, with Hubbard, the owner of the land from which it was taken. Hubbard was in possession of the premises, and, by the contract, the defendants were to cut the wood and to pay Hubbard a certain price per cord on the 1st of March, 1871. The defendants did not know until on or about the 24th of February, 1871, of the plaintiff's mortgage, or that there was any incumbrance on the land. The wood had then been cut, and nothing remained to be done by the defendants under the contract, except the payment of the purchase-price. There can be no doubt that the title to the wood vested in the defendants upon its severance from the land. They were the owners of the wood by purchase from the owner of the land, and were debtors to Hubbard for the agreed price. The fact that the land was mortgaged when the contract was made, or when the wood was cut, did not affect the defendant's title to the severed property, and although the cutting of the wood impaired the security of the mortgage, the defendants were not responsible to the mortgagees for the resulting injury, unless they cut the wood, knowing of the lien, and with intent to injure the plaintiff in respect to his security. (Van Pelt v. McGraw, 4 Comst., 110.) There is an additional reason in this case why the plaintiff is precluded from treating the act of the defendants, in cutting the *Page 130 
wood, as tortions, or as a violation of his rights or equities. After he was informed that the defendants were cutting the wood, he took no proceeding to prevent a continuance of the waste, but allowed the work to proceed upon the promise of Hubbard that he would apply the money he should receive from the defendants upon the Knapp mortgage. The promise was made in December, and it was not until the following February that he notified the defendants of his claim on the premises, and at that time they had completed the work under the contract with Hubbard. This transaction operated as a license to Hubbard to sell the wood to the defendants, and estopped the plaintiff from questioning their title. The question then comes to this: Could the defendants lawfully pay their debt to Hubbard, against the protest of the plaintiff, after being informed that Hubbard threatened to violate his agreement to apply the money on the prior mortgage? There can be but one answer to this question: The defendants' contract was with Hubbard alone, and their debt was owing to him. The promise of Hubbard to apply the amount he should receive from the defendants on the Knapp mortgage, did not make the plaintiff the assignee of the debt. It gave to the plaintiff at most a right as against Hubbard to intercept the payment upon proceedings taken, based upon evidence that he threatened to dispose of the money in violation of his agreement.
We express no opinion whether such an action could be maintained, but we think it is clear that until prevented by the order of the court, the defendants could lawfully pay the debt to Hubbard, and that if they had refused, he could have maintained an action to recover it.
The defendants were neither parties or privies to the agreement between Hubbard and the plaintiff, as to the application of the fund, and they owed no legal duty to the plaintiff to defer the payment of their debt at his request. That agreement recognized Hubbard's right to receive the payment, and no legal proceedings having been taken to prevent it, the payment to him was a valid discharge of their obligation. *Page 131 
In view of the finding of the jury, it cannot be claimed that they colluded with Hubbard in the transaction, or misled the plaintiff, or induced him to institute legal proceedings against Hubbard, upon the promise to retain the money until an injunction should be procured.
The judgment should be affirmed.
All concur.
Judgment affirmed.