HENRY VERNER, appellant,

*v.*

JOHN F. BETZ, respondent.

1. A mortgagor in possession removed a building to another lot of land, to make room for part of a larger building and improvements, and sold the lot and building affixed to it to a *bona fide* purchaser. *Held*, on bill for foreclosure of the mortgage, that the building could not be returned to the mortgaged land, and the remedy of the mortgagee was at law, for the removal of the building.

2. A mortgagee will have the security of his lien protected by injunction.

On appeal from a decree advised by Vice-Chancellor Bird, who filed the following conclusions:

On this bill to foreclose and the answers and proofs, the question arises whether or not the complainant has any remedy against a dwelling-house which was removed without the consent of the mortgagee from the premises, included and described in his mortgage, after the execution of the mortgage, to another lot of land near by, which, after such removal, was purchased and owned by the defendant, the mortgagor, and then sold by him to the defendant Verner. The land upon which the house was so erected, and which is described in the mortgage, was a lot of twenty feet in width, and, without the building, is not worth over $250, but with the dwelling-house upon it, was worth about the amount of the mortgage, $1,500. The mortgagor, after removing the said house, erected on the lot adjoining, and also on four feet of the mortgaged premises, a building called a dancing-hall, twenty-eight feet in width and fifty feet long and two stories high.

The complainant prays that the defendant, the mortgagor, may be compelled to remove the said dwelling-house back to said lot from whence he took it, insisting that there is room, notwithstanding the erection of the said dancing-hall, for him to replace said dwelling-house thereon. It is contended that, under the circumstances of the case, the court has the power to make an order or decree requiring the defendant to do this.

The defendant Muench, the mortgagor, and Verner, his vendee, both earnestly deny the power of the court to make any such decree. Their insistment is, that the said dwelling-house, when attached to the freehold, was part of the freehold; yet when it was severed it became personal property, and the power of the court over it was absolutely and forever gone. This, of course, admits, that if a threatened wrong is accomplished, it then has accrued into a right, and cannot be restored in specie; while it may be redressed, as any other wrongful act, by suit, it involves no equitable considerations permitting the court of chancery to take cognizance thereof. It is, perhaps, admitted in

17

the discussion, that it would have been within the power of the court to stay the hand of the transgressor at any time before the outrage was so far consummated as to remove the object entirely off the premises, but the moment the border line had been crossed, that moment the wrong-doer was released from the operation of all equitable principles or considerations. That this view may work very harshly, is abundantly proved by the case now before me. If the complainant has no hold upon his dwelling-house, at least $1,250 of the money loaned to the defendant, the mortgagor, is hopelessly lost. If this principle be acknowledged as a well-settled principle in equity, it then only becomes necessary for a mortgagee, the owner of a valuable house and lot—the house comprising nine-tenths of the whole value—to move the house upon an adjoining lot, in order to discharge the operation of the lien of the mortgage from the house. It is said that you may restrain a mortgagor who threatens to remove timber, trees or ores, or the like, from the inheritance, if it will materially depreciate the value of the mortgaged premises, and render them a scanty security, but that in such cases restoration has never been made.

Now, while this assertion is true, I am unable to find any case where the removal has been carried on to the extent, in value, that it has been in this case. It would seem hard, indeed, if the mortgagee taking a mortgage for $10,000 upon a tract of land covered with valuable timber, ample security for the money loaned with the timber thereon, but of no value without the timber, should be declared to be without remedy, because the mortgagor had suddenly and with a great force removed said timber over the border.

However, it is said that in every such case the mortgagee has his remedy in trover. It strikes me as very doubtful, indeed, whether a mortgagee, who has not the legal title and not the possession, could sustain trover. Certainly the owner of the fee in such cases would be permitted to bring trover. This is shown in *Watson* v. *Hunter, 5 Johns. Ch. 169 (9 Am. Dec. 295)*. In this case Chancellor Kent refused to enjoin the defendant from removing the timber cut, because the complainant was entitled

to an action in trover. The complainant had the fee. But in that case the court admitted that fraud was a proper element of consideration, and, in case fraud should be shown, said the court had the power to prevent the removal of timber. Now, if the allegation of fraud can be considered at all, in such case, it seems to me that the court is inevitably carried on from the beginning to the ending of every fraudulent transaction. I cannot conceive of any stopping-place, short of compelling the fraud-doer, who has the·fruits of his wrong, to surrender.

But the defendant, Verner, insists that the fraud alleged in the bill, as against him, has not been proved; and that, as he was a purchaser for a valuable consideration, his title to the premises is complete as against the mortgagor. The inquiry, therefore, must be as to his knowledge of what was being done by Muench, at the time he moved the house from the mortgaged premises to the lot now owned by Verner. If Verner had knowledge of the fact that Muench moved the dwelling from the premises covered by the complainant's mortgage, it would be very difficult indeed for any considerate and unbiased mind to free him from blame, and to hold that he was not liable, in the eye of the law, for a participation in a transaction which threatened mischief to the complainant. Now, did Verner have such knowledge? It is undisputed that the house was moved in the month of February, 1887. It is also undisputed that, at that time, Verner was in the employ of Muench, selling beer for him, in a public place, open to the reception and entertainment of guests. It is also clear, that the place where the business was carried on, which was being so managed by Verner for Muench, was hard by the premises covered by the complainant's mortgage, and within plain view thereof. This important fact seems to have been admitted on all hands. It is also well established, that the house was not carried away to its destination in a day, for Muench himself says that he was in the neighborhood of a month in moving it. Now, although Verner says he knew nothing of the fact, yet I cannot credit his statement; I cannot look at the case from any standpoint and be induced to believe that Verner could be in the employ of Muench in such a place as an hotel, where the

neighbors were congregating constantly, and within plain view of what Muench was doing, and the matter not only not have been talked about in Verner's presence and to him, but he not have any knowledge of it, from his own observation. Notwithstanding oaths and affirmations in such cases, the ordinary course and progress of events are so well known and understood by all men, that unless an extraordinary circumstance intervenes and is itself presented affirmatively as a reason, the course or progress of events will control courts of justice and the common sense of juries. I conclude, therefore, without a moment's hesitation, that Verner was not innocent in this transaction, and that he had knowledge, when he took the title to the house in question, that it was the house which had just before stood upon the lot embraced in the complainant's mortgage, and that, having such knowledge, he must abide by all the consequences which flow therefrom. There are many other circumstances, such as Verner's limited means; the necessity of using what money he had in the business which he had at the time of his purchase engaged in; the borrowing of all the money to pay for the house and lot except $100; the fact that he had to take that house and lot in order to secure the $100 and $400 which he had loaned to Muench several months before; and the additional fact, that before Muench himself got the title, on the 29th day of July, it was understood that he was to convey to Verner, and did so convey on the 3d of August, five days following; and the fact that Muench continued to collect the rents for the premises,. although he did so as agent, yet, while acting as such agent, declaring, in effect, that he had managed to save the property in question for himself; which last declaration, although made after the pretended sale to Verner, yet, I think, made, as it was, by him as agent for Verner, and while dealing with the property in question, is fairly admissible in evidence and is entitled to due consideration. Therefore, if the cases do not go to the length of continuing a lien upon a house which constitutes nine-tenths of the value of the property mortgaged as security, I think none will dispute that where a fraud of this kind is perpetrated it will be violating no principle of equity to require the fraud-doer to

Verner v. Betz.

surrender the fruits of his illegal transaction. It seems most clear, to my mind, that the mortgagee had as perfect a lien upon the building in question as he had upon the land itself, and that it is the duty of the court, under such circumstances, so to declare. There seems to me to be no process of reasoning by which a court can justify itself in holding, under such circumstances, when the principal part of the mortgaged premises have been removed, that the mortgagee loses all right of lien because of such removal. In my opinion, it would be as sensible to say, that if the mortgagor should remove his stock of store goods, or herd of cattle or flock of sheep, from the place described in the mortgage, that thereby the mortgagee should lose his lien, as to say, in the case I am now considering, that the mortgagee has lost his lien. I am sure there is no other department of equity where the arm of the court has ever been placed under such rigorous restraint; and hence I find relief in the consideration that the case does not depend upon the proper solution of this problem by me. Finding, as I do, that Verner had knowledge, that all the circumstances were such as to warn him against taking title to this property and paying his money therefor, if he did really pay the $800 of the $1,300, I conclude, as I have said, he can take nothing by his title, so far as the value of the house is concerned.

The complainant asks that a receiver may be appointed, with authority to enter upon the premises purchased by Verner and to take charge of the house and move it back to the lot from whence it was removed.

I will advise that, unless the defendant, Verner, within twenty days from the service of a copy of the decree of foreclosure upon him, pay to the complainant the amount due upon his mortgage, and the costs of this suit, that a receiver be appointed with authority as above stated; and in case he complies with such decree to that extent, then the complainant will be required to assign such decree, and all his rights and interests therein and thereto, to said defendant, Verner.

The bill of complaint sets forth that the respondent, John F. Betz, held a mortgage on a lot of land in the city of Camden,

given by August Muench, one of the defendants, to secure a
bond conditioned for the payment of $1,500, with interest, dated.
October 10th, 1885, duly recorded October 17th, 1885, and that
there were other subsequent encumbrances; that when the mort-
gage was executed and delivered to him, the premises consisted
of a two-story frame dwelling-house, and the lot of land therein
described, whereon the house was erected; that in February,
1887, without his knowledge or consent, Muench removed the·
dwelling-house to another lot about forty feet northward; that
at the time of removal this other lot belonged to E. A. Arm-
strong, trustee for an association, who, by deed dated July 29th,
1887, conveyed the land to Muench, and Muench and wife, by
deed dated August 3d, 1887, conveyed to Henry Verner. He
further claims that the removal of the house and the purchase
and sale of the property were fraudulent; that the security of
his mortgage is thereby diminished; that it is still subject to the·
lien of his mortgage, and should be returned to the land de-
scribed therein; that Muench has erected, partly on the mort-
gaged lot of land, a two-story frame building, used as a dancing-
hall and bowling-alley, twenty-four feet in width and fifty-eight
feet in length, and the part thereof erected on the mortgaged
premises is four feet in width and fifty-eight feet in depth; that
other persons claim building liens on the building and the lots
whereon it stands; and the title to the land on which the build-
ing is erected, adjoining the mortgaged land, is now in other·
parties. He also sets forth that the lot of land without the
building is worth about $250, and inadequate to secure and raise
the amount of his mortgage, and that Muench is insolvent. He·
therefore prays a foreclosure and sale of the mortgaged premises,
that Muench and Verner may be decreed to return the frame·
dwelling-house to and upon the lot of land described in his mort-
gage, and that they may be restrained from conveying or creating
any lien on the same.

The defendant, Verner, denies all fraud, claims to be a bona
fide purchaser for full value and without notice of complainant's
mortgage, or of the removal of the dwelling-house from the
mortgaged premises. Upon the proofs taken a decree was made,.

that unless Verner pay the complainant's debt and costs within twenty days, a receiver be appointed to take charge of the dwelling-house and move it back to the lot whence it was removed, and that the mortgaged premises be sold to satisfy the debt secured by the mortgage, with other encumbrances and costs.

The defendant, Verner, appeals from this decree.

*Mr. John W. Wartman*, for the appellant.

*Mr. W. S. Casselman*, for the respondent.

The opinion of the court was delivered by

SCUDDER, J.

The exact form in which this decree is made, for the removal of the house back to the mortgaged premises from which it was taken, is, so far as my examination of the authorities has gone, without precedent. But this may be not objectionable if, in administering equitable relief, it be found necessary to apply a remedy which is unusual. The design of the bill is to restore to the mortgagee his security, which he alleges has been taken from him by the severance of the dwelling-house from the land covered by his mortgage and its annexation to land owned by another. The defence is, that the house was removed on another lot to make room for a larger building which was to be extended over on the lot of land from the adjoining premises ; that the defendants acted in good faith ; that the complainant had notice, and, if he did not consent, did not object ; that a full money consideration was paid, without any actual notice of the lien of the mortgage on the land from which the building was removed, and that the defendant, Verner, who appeals, is a *bona fide* purchaser of the building.

The facts are not as fully proved as they might have been, and are thus likely to mislead the court. We do not find in the evidence proof of the knowledge of the defendant, Verner, of the transfer of the building from one lot of land to the other, by which he may be charged with constructive notice of the lien

of the mortgage, nor actual notice of a fraud that was intended, which appears to have been satisfactory to the court below.

It appears that Verner lived in Philadelphia up to February 15th, when he moved to Camden and opened a grocery store, about two squares from Muench's place of business, and after that time went there frequently. He kept bar for him from May to August. Muench testifies that the house was removed about the 3d or 4th of February, and thinks they started in January. This was before Verner came to Camden. Verner says he did not know that the house had been moved from another lot until after he had bought it. This evidence, if believed, shows that he neither saw nor knew that the house was moved from the mortgaged premises, and there was not a fraudulent knowledge or collusion in the purchase. Without proof of such collusion, the testimony of two witnesses that Muench told them "he removed the dwelling-house so that if the sheriff came on him he would have a house, anyhow," is not competent to show that Verner had knowledge of a fraudulent purpose and participated in it. If said, it was spoken between other parties, in his absence. *Faulkner* v. *Whitaker, 3 Gr. 438.* The payment of the consideration by Verner to Muench, is testified by them and by Muench's wife, who says she saw money paid, without knowing the amount. The purchase-price, they say, was $1,300, paid in different sums, at several times—$400 on February 15th, $300 July 30th, $500 on August 1st, and $100 in wages due Verner. The first money was brought from Philadelphia, obtained by selling out a grocery there, and cash on hand; the second and third payments were, as Verner says, borrowed from his brother. The first sum was $400, loaned to assist Muench in building; afterwards, he says, when he asked for it, he was told that he, Muench, had no money, and he offered to sell the house and lot; he did not want it, but with the advice and help of his brother he bought it to save losing the money he had loaned. Although this money was all paid before August 3d, when the deed was dated, it was not a pre-existing debt, without parting with anything of value at the time of conveyance, depriving the defendant, Verner, of the character

of a *bona fide* purchaser for value, as was argued by counsel, but all, excepting the first two items, were parts of a present consideration, appropriated, when made, to its payment, and sufficient to constitute the defendant, Verner, a *bona fide* purchaser in equity. *Mingus* v. *Condit, 8 C. E. Gr. 313 ; De Witt* v. *Van Sickle, 2 Stew. Eq. 209 ; Basset* v. *Nosworthy, Finch 102 ; 2 White & T. Lead. Cas. 1.*

The small profit derived from the grocery store conducted by his wife while he attended bar for Muench, and before that time; the fact that Muench collected rent of the tenant, after the alleged sale, as Verner's agent, and the failure to produce the brother who was said to have loaned the money to complete the purchase, cast suspicion on the consideration ; but as the proof now stands, with the positive evidence of three witnesses to sustain it, and nothing more than these circumstances to overcome it, we do not feel warranted in saying that this payment was not made. Muench swears positively that he received these sums of money and applied them to making the improvements for the summer garden.

Assuming that the appellant, Verner, bought the house and paid for it a valuable consideration, without knowledge of its removal, as appears by the direct proof; and that Muench sold it, as he testifies, to raise money to pay for the hall building and the improvements he was making, the important question is presented, whether the complainant is in a position to obtain the relief he asks here for the injury he has sustained.

Can a court of equity return to the wasted property the building that has been wrongfully removed, and sold to a *bona fide* purchaser, after being affixed to other land not included in the mortgage ?

The subject of legal and equitable relief, where such removals are made, is considered by Mr. Jones in his book on *Mortgages* §§ *143, 144, 453, 684,* with abstracts from cases and numerous citations in the notes. It is a question on which the authorities are divided, and depends for its solution on the effect given to a mortgage of lands.

It seems that where the mortgage is regarded as a conveyance of the legal title to the property, giving the mortgagee the right of possession, there his legal ownership and actual, or constructive, possession, give him the right to follow and recover the property severed. The principle applied is, that property severed from the realty, so as to become a chattel, belongs to the legal owner of the land. But where the mortgage is regarded merely as a lien for security and the mortgagor has the right of possession until ejectment, or foreclosure, there the mortgagee has merely the right to restrain the removal of the property by injunction, to protect his lien; or, after the removal, a right to recover damages for the wrongful diminution of his security.

The case of *Hamlin* v. *Parsons, 12 Minn. 108,* comes nearer to the conclusion reached by the decree in this case than any other to which my attention has been called. There the mortgagor moved a dwelling on an adjoining lot belonging to his wife, without the knowledge of the mortgagee, *but with the knowledge of the wife,* and it was held ·that the lien on the dwellinghouse remained and the mortgagee might sell the lot of land covered by the mortgage, and afterwards the house, to satisfy his mortgage. But in *Harris* v. *Bannon, 78 Ky. 568,* where a petition was filed in equity to subject to the lien created by the mortgage a number of cottage buildings which had been removed to other land and affixed, it was held that when the buildings were severed from the mortgaged premises, and had become part of another freehold, the lien upon them was gone. In *Peirce* v. *Goddard, 22 Pick. 559,* the materials of a dwelling-house on mortgaged land were used in the construction of a house upon another lot of land; it was said the right of property vested in the grantee of that land, and the mortgagee could not maintain trover against the purchaser, either for the new house, or the old materials used in its construction.

In *Cooper* v. *Davis, 15 Conn. 556,* mill-stones were severed from the mill and sold by the mortgagor; it was held that the title passed to the purchaser, and there was no power to seize them after they had been severed and carried away.

In *Buckout* v. *Swift, 27 Cal. 433,* where a house subject to a mortgage was floated off by a flood into the street, and was bought while in that position, it was said that the severance affected the right of lien, that a building on land was subject to the lien of the mortgage whether there at the time of the mortgage, or built there afterwards, but when severed, the lien was lost. If the contrary were the law, everything affixed to mortgaged lands might, when severed and sold to a *bona fide* purchaser, be followed and reclaimed. *Clark* v. *Reyburn, 1 Kan. 281; Kimball* v. *Darling, 32 Wis. 684; Van Pelt* v. *McGraw, 4 Com. 110; Gardner* v. *Heartt, 3 Denio 232; Lane* v. *Hitchcock, 14 Johns. 213; Hutchins* v. *King, 1 Wall. 53; Gore* v. *Jenness, 19 Me. 53; Gooding* v. *Shea, 103 Mass. 360; Byrom* v. *Chapin, 113 Mass. 308; Wilson* v. *Maltby, 59 N. Y. 126,* and many other cases might be cited, as illustrating the differences of opinion, and the principles applied in determining the rights of parties when fixtures are severed and sold from mortgaged lands.

A distinction is made in *Hoskin* v. *Woodward, 45 Pa. St. 42,* where it is said that " a mortgagor may sell, in the usual way, lumber, firewood, coal, ore or grain growing on the land, until the mortgagee stops him by ejectment, or estrepement, for these things are usually intended for consumption and sale, and the sale of them is the usual way of raising the money to pay the mortgage. But in the case of a factory, or other building, it is from the use of it as it is, and not by its consumption, or its sale by piecemeal, that all its profits are to be derived."

It is manifest that this cannot be reconciled with cases cited above, as furnishing a rule applicable to all fixtures, but that any general rule must be based on the right of property. If the mortgagee have the legal ownership and right of possession, he may follow things severed and removed from the mortgaged lands, without his consent, wherever he can find them. If he holds title under the mortgage only as security for his lien, then the remedies appointed for preserving the security, and compensating for any loss sustained by its diminution, are such, only, as the mortgagee may use. The theory in the latter case is, that as to innocent third parties, the mortgagor is the owner of the

property, and may sever and sell until restrained by injunction, ejected by entry, or barred by foreclosure.

In any view taken of the respective rights of mortgagor and mortgagee, the latter may have the security of his lien protected by injunction. *Brady* v. *Waldron, 2 Johns. Ch. 148; Emmons* v. *Hinderer, 9 C. E. Gr. 39.*

In our state the title of the mortgagee to lands under his mortgage has been defined by this court in *Shields* v. *Lozear, 5 Vr. 496, 503,* where it is said, that the mortgage is regarded, not as a common-law conveyance, on condition, but as a security for debt, the legal estate being considered as subsisting only for that purpose. This is elsewhere called the equitable and the American doctrine by which the mortgagor has a right to lease, sell and in every respect deal with mortgaged premises as owner, so long as he is permitted to remain in possession and so long as it is understood and held, that any person taking under him takes subject to all the rights of the mortgagor. *4 Kent Com. 157.*

There is no difficulty in applying this rule while fixtures remain attached to the realty, and so long as the mortgagor continues in possession; or when the property severed passes into the possession of a person in collusion with him to defeat the lien and security of the mortgagee, whether upon or off the mortgaged premises, it would seem that the rights of the mortgagee would be unaffected. But when the property is severed and sold by a mortgagor in possession, having the legal title, to an innocent purchaser, the lien in equity is gone, and the remedy of the mortgagee is by an action at law against the mortgagor and those who act with him to impair or defeat the security of the mortgage.

The case of *Kircher* v. *Schalk, 10 Vr. 335,* holds, that a mortgagee of real estate, whose debt is due, but who has not entered into possession, cannot maintain *replevin* for a steam-engine affixed to the realty subject to the mortgage, which the mortgagor or his assigns had severed from the realty and removed from the premises, because the mortgagee cannot, with propriety, insist upon being legally entitled to a remedy the enforcement of which pertains to the general legal ownership of the land. But in

*Jackson* v. *Turrell, 10 Vr. 329,* it was decided that a mortgagee may maintain an *action on the case* against the mortgagor, or his assigns, for an injury to the security resulting from the removal of fixtures, or other waste by the defendant. Notice, without fraud, was said to be sufficient to charge the purchaser with liability.

It is not necessary in this case to determine whether a court of law will enforce this remedy against a *bona fide* purchaser without actual notice, or the exact form of remedy that may be there used ; but in a court of equity the right of such purchaser is equal to the equity of a mortgagee who has not such title to the article severed that he can maintain an action for the recovery, in specie, of the fixture removed.

It is a maxim, that where there is equal equity the law must prevail. It is upon this account that a court of equity constantly refuses to interfere, either for relief or discovery, against a *bona fide* purchaser of the legal estate, for a valuable consideration, without notice of the adverse title, if he chooses to avail himself of the defence at the proper time and in the proper mode. *1 Story Eq. Jur.* § *64 c.*

The conclusion given in *2 Pom. Eq. Jur.* § *743* on this matter is, that wherever one or the other of the parties has a legal estate over which a court of law can exercise jurisdiction, then, in an equity suit between them, as a general rule, the defence of a *bona fide* purchaser for valuable consideration will avail as against the plaintiff, whether he has a legal or an equitable estate ; in either case the court of equity simply withholds its hand and remits the party to a court of law.

In the review of cases which appear to conflict with the conclusion in this case, cited from the English courts, it must be borne in mind that there the mortgagee has the legal title to the mortgaged land, and the right of possession.

Having found that the appellant, Verner, is a *bona fide* purchaser of the building in controversy, affixed to his land, according to the weight of the evidence, as presented, the decree will be reversed and modified so that the land described in the mortgage with the building and improvements thereon, as they

existed at the time of filing the bill, shall be sold to satisfy the mortgage; and as to the injury sustained by the removal of the building formerly on the land, the mortgagor will be remitted to his remedy at law.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, DIXON, GARRISON, KNAPP, MAGIE, VAN SYCKEL, BROWN, CLEMENT, COLE, McGREGOR, SMITH, WHITAKER—12.