[No. 13957.   Department One. — November 27, 1891.]

ALFRED J. MOISANT, RESPONDENT, *v.* GEORGE S. McPHEE, APPELLANT.

DEED — SECURITY FOR INDEBTEDNESS — MORTGAGE — TITLE. — A deed absolute on its face, but intended merely to secure an indebtedness of the grantor to the grantee, is a mortgage, and does not convey the title to the land.

ID. — LIEN OF MORTGAGE — SEVERANCE AND REMOVAL OF BARK — PERSONAL PROPERTY — TITLE OF MORTGAGEE. — The severance of bark from trees growing on mortgaged premises, and its removal from the mortgaged land, changes the character of the bark from real to personal property, and frees it from the lien of the mortgage; and the fact that the mortgage was by deed absolute upon its face confers no title or right of possession upon the mortgagee to the bark so severed and removed by the mortgagor.

ID. — CONTRACT FOR REMOVAL AND SALE OF BARK — APPLICATION OF PROCEEDS — LIEN OF MORTGAGEE — UNDELIVERED BARK. — A contract be-

tween a mortagor and mortgagee, by the terms of which the mortgagor
is to cut bark from trees upon the mortgaged land, and the mortgagee
is to advance the expenses of cutting and removing the bark, and to sell
it and apply the proceeds in paying the advances and the mortgage debt,
and turn over any surplus to the mortgagor, does not create a lien upon
the bark in favor of the mortgagee while remaining in the mortgagor's
possession after it has been severed from the trees and removed from
the property, without delivery to the mortgagee.

ID. — CREATION OF LIEN UPON BARK — POSSESSION — BONA FIDE PURCHASER
— CONVERSION BY MORTGAGEE. — A lien upon the bark so severed and
removed by the mortgagor can only be created in favor of the mortgagee
by contract or by operation of law; and if possession thereof is not taken
by the mortgagee, any lien which he may have by contract or otherwise
is void as against a *bona fide* purchaser from the mortgagor for value,
and he is liable to such purchaser for conversion, if he takes possession
of the bark after a sale and delivery thereof by the mortgagor to the
purchaser.

APPEAL from a judgment of the Superior Court of
Mendocino County, and from an order denying a new
trial.

The facts are stated in the opinion of the court.

*J. A. Cooper*, and *T. L. Carothers*, for Appellant.

*Yell & Seawell*, and *R. P. Clement*, for Respondent.

BELCHER, C. — This is an action to recover the value
of 156 cords of oak tan-bark, alleged to have been in the
possession of and owned by the plaintiff, and to have
been wrongfully taken by the defendant and converted
to his own use on the fifth day of June, 1888.

It appears from the findings and evidence, that on
the eleventh day of January, 1884, one Warren was the
owner of a tract of land in Mendocino County, and
on that day conveyed the same to the defendant and
one Markle, who were partners doing business under
the firm name of McPhee & Markle. The conveyance
was by a deed absolute in form, but was intended as a
mortgage to secure the payment of about two hundred
dollars, then owing by the grantor to the grantees for
goods, wares, and merchandise. In May, 1886, the two
hundred dollars being still unpaid, Warren made a con-
tract with McPhee & Markle, by the terms of which he

was to go upon the land conveyed, and peel tan-bark thereon and put it on the road, and they were to advance to him, to pay the expenses of preparing the bark, not exceeding $5.50 per cord; and when the bark was ready for shipment, they were to ship it to San Francisco and sell it, and after deducting from the proceeds expenses of hauling, freight, and all advances, were to apply the balance in payment of his indebtedness, and if any surplus remained, pay it over to him. During the year 1886, Warren peeled 183 cords of bark and delivered it over to McPhee & Markle, and McPhee subsequently, having assumed the bark contract as between himself and Markle, sold it, and applied the proceeds as agreed.

During the summer of 1887, Warren peeled and prepared the bark in controversy on the deeded land, and while doing so, defendant furnished him supplies and money to meet his expenses. In the fall of the year, at the request of Warren, defendant sent and paid a teamster to haul the bark to Bear Harbor landing. One Keller was foreman at the landing, and Warren asked him where he should pile the bark, and a space was allotted him for that purpose. The bark was piled by Warren on the space allotted, and after it was all delivered, was shedded in by him to protect it from the rains. In December, 1887, plaintiff, Warren, and Keller met at the landing, and after measuring the pile of bark, Warren sold it to plaintiff for $1,404, and executed to him a bill of sale of it. Plaintiff then put Keller in charge of the bark for him, and subsequently put up notices on it that he was the owner. Plaintiff paid the purchase price in full, and at the time of his purchase had no notice that defendant had or made any claim to it. At the time of this sale, Warren was indebted to the defendant for supplies furnished and money paid out and advanced, as before stated, in about the sum of one thousand dollars. This sum not being paid, defendant, on June 5, 1888, shipped the bark to San Francisco, and converted it to his own use.

Upon these facts the court below gave judgment for the

plaintiff, from which, and from an order refusing him a new trial, the defendant appeals.

The principal contention of appellant is, that the title and right to the possession of the bark were in him at the time of the alleged conversion, and hence that the judgment should be reversed.

At the trial, both Warren and appellant testified that the deed put in evidence was given only to secure the payment of an indebtedness on account. The deed was therefore a mortgage, and did not pass the title to the land which it purported to convey. (*Taylor* v. *McLain,* 64 Cal. 514; *Healy* v. *O'Brien,* 66 Cal. 519; *Raynor* v. *Drew,* 72 Cal. 309.) And when the bark was severed from the trees and moved away, it was freed from the lien of the mortgage. (*Buckout* v. *Swift,* 27 Cal. 433; 87 Am. Dec. 90; *Hill* v. *Gwin,* 51 Cal. 47.)

The contention that appellant had title to the bark cannot, therefore, be sustained.

The only question, then, is, Did appellant acquire a valid lien upon the bark after it was severed from the trees? We are unable to see under what statute or rule of law it can be said that he did. A lien is created by contract, or by operation of law. (Civ. Code, sec. 2881.) Appellant was not a mortgagee or pledgee of the bark, and the evidence fails to show that any contract was made which would create a lien of any kind. But if it be admitted that he had a lien, still, the possession of the bark was not taken by him, and hence his lien was void as against the plaintiff, who purchased the property in good faith and for value. (Civ. Code, sec. 3440.)

Some other minor points are presented, but we do not think they need be discussed. We see no prejudicial error in the rulings or findings of the court, and therefore advise that the judgment and order be affirmed.

Fitzgerald, C., and Temple, C., concurred.

The Court. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.