[No. 19166. Department Two.—October 10, 1893.]

N. W. STOWELL, RESPONDENT, v. W. J. WADDING-
HAM ET AL., APPELLANTS.

INJUNCTION TO STAY WASTE—REMOVAL OF BUILDINGS.—An owner of land
which he has contracted to sell to a purchaser who has caused houses ·
to be erected thereon under an agreement that the houses shall
belong to the contractor until paid for, cannot maintain an injunction
against the vendee of the contractor to stay waste, after such vendee
has removed the buildings from the land on to the public highway,
although the land when deprived of the buildings is insufficient security
for the unpaid purchase money.

ID.—CHANGE OF REAL PROPERTY TO PERSONAL—DESTRUCTION OF LIEN.—
The severance of the buildings from the freehold *proprio vigore,* changed
the character of the houses from real to personal property, and effec-
tually destroyed the lien of the vendor thereupon for the unpaid pur-
chase money.

ID.—BUILDINGS IN TRANSIT UPON HIGHWAY—RIGHTS OF OWNER OF
LAND.—The owner of land has no right to stop the buildings removed
from his premises by the assignee of the builder, while in transit upon the
public highway, although not removed beyond the center line of the
highway bordering upon his premises. Property carried over the street
in front of his premises is no more on his premises than if it were miles
away.

APPEAL from an injunction order of the Superior
Court of San Bernardino County.

The facts are stated in the opinion of the court.

*Harris & Gregg,* for Appellant.

*William Gird,* for Respondent.

TEMPLE, C.—This case resembles *Miller* v. *Wadding-
ham,* 91 Cal. 377. In fact the building contract is the
same in both cases. Clubine contracted with the de-
fendant, Newman, to build certain houses, six upon land
he had contracted to purchase from Miller, and six on
the land purchased from plaintiff. The buildings were
alike, and all were building at the same time.

Clubine had a contract with plaintiff to purchase from
plaintiff about twenty acres of land in the town of On-
tario. He was not given possession under the contract,
except that he was authorized to divide the land into

blocks and lots. He might sell lots at not less than a fixed price, and plaintiff would make the deeds and receive the purchase money. The contract price for the land was eighteen thousand five hundred dollars, and the plaintiff testified that he had received of this about five thousand dollars.

Clubine failed to make the payments agreed upon, and asked for an extension of time, and promised to have some buildings erected upon the land, and thereupon the time was extended.

The contract price for the buildings to be erected by Newman upon the land purchased from Stowell was four thousand one hundred dollars, payable in weekly installments. Newman furnished all materials, and did all the work. After the houses had all been commenced, and were from one-eighth to one-fourth completed, Clubine failed to make payments, and informed Newman that he could make no more. Seven hundred dollars only had been paid. It was then agreed between Clubine and Newman that Newman should finish the buildings, and that he should own them unless they were paid for. Under this arrangement the houses were all completed by Newman.

Plaintiff testified that he knew nothing of this arrangement between Newman and Clubine; that he did not object to the construction of the houses, but was anxious to have them built. It does not appear that Newman was aware of the understanding between Clubine and the plaintiff. The houses rested upon mudsills placed upon the surface of the ground, and plaintiff testified that upon their removal the land was left substantially as it was before their erection.

Newman, after the completion of his contract, filed a claim for a mechanic's and material-man's lien upon the houses, but afterwards, as they were not paid for, sold them to the defendant, Waddingham, who commenced their removal on Saturday night, and worked with a body of men all night and all day Sunday.

Plaintiff appeared upon the ground while the work of

removal was going on, and forbade it, and on the following Monday commenced this action enjoining the work. At that time all the houses had been removed from the premises into the streets, where they still are, except one, which was taken away. The finding upon the subject is as follows:

"12. That all of said houses in paragraph mentioned and described were at the time this action was brought, and still are, in the public streets and highways of Ontario, in said county of San Bernardino, resting upon blocking, rollers, and moving appliances, which were placed under said buildings by said Waddingham for the purpose of removing said lumber, but upon the land the title to which is in N. W. Stowell. Said houses were all so removed into said streets and highways by defendant Waddingham, but not beyond the center lines of any of said highways bordering said premises described in plaintiff's amended complaint."

The complaint avers, and it is found, that deprived of the buildings the land constitutes insufficient security for the money still due plaintiff upon his contract for the sale of the land.

If it be admitted that under the circumstances plaintiff was the legal owner of the houses, he had an adequate remedy at law, but whether owner or mortgagee, this action to stay waste cannot be maintained. It was commenced too late; the waste had already been committed. He had no right to stop the buildings in the public highway. (*Buckout* v. *Swift*, 27 Cal. 433; 87 Am. Dec. 90.)

In that case the plaintiff was mortgagee, and the house was a part of the land when the mortgage was executed. The premises were in Sacramento, and the house was moved by the great flood of 1862 into the street, a short distance from the lot. There it was purchased by Lowell with a full notice of plaintiff's mortgage. The court said: "So far as legal effect is concerned, it matters not whether the severance is by act of God or the act of man. The severance *proprio vigore* changed

the character of the property from real to personal, irrespective of the means by which it was accomplished."

It was also said that by the removal of the house from the premises "the house was effectually removed from the operation of the mortgage lien." Plaintiff's counsel claims that Stowell's position is that of a mortgagee. In such case his lien was effectually destroyed by the removal of the houses. But whether he was owner or mortgagee this suit cannot be maintained.

Respondent's counsel does not appear to dispute this general proposition, but he contends that inasmuch as plaintiff is the owner of the land over which the street runs to the center line of it, as to that boundary the mortgaged premises extend, and the houses though severed from the land are still on the premises and subject to his lien. Conceding, for the purposes of the case, that a suit could be maintained although the fixtures had been severed from the land, put upon rollers and wheels and were being moved off from the premises but were not yet entirely off, such a case is not made by the facts.

The owner of land, over which a public highway has been established, has no right to place his buildings there in such a way as to obstruct the highway, nor has he any right, as such owner, in anything in transit over the highway. He cannot interfere with persons using the street simply because he owns the land subject to the public easement. Property being carried over the street is no more on his premises there than it would be miles away.

I think the order appealed from should be reversed, and the cause remanded.

BELCHER, C., and SEARLS, C., concurred.

For the reasons given in the foregoing opinion the order appealed from is reversed, and the cause remanded.

McFARLAND, J., FITZGERALD, J., DE HAVEN, J.