[No. 2,006.]

GEORGE W. HENLEY AND, THOMAS B. HENLEY
v. A. P. HOTALING AND LLOYD TEVIS.

CONVERTING A DEED INTO A MORTGAGE.—When an attempt is made to
convert a deed, absolute in form, into a mortgage, the evidence ought to
be so clear as to leave no doubt that the real intention of the parties was
to execute a mortgage; otherwise, the intention appearing on the face of
the deed will prevail.

IDEM.—Parties may buy lands in satisfaction of a debt, or for a consideration
paid, and contract to reconvey upon the payment of a sum certain, without
any intention that the transaction should create a mortgage.

COVENANT TO RECONVEY.—A covenant to reconvey does not necessarily con-
vert an absolute deed into a mortgage. It may be one among other facts
showing that the parties intended the deed to operate as a mortgage.

PUBLIC POLICY.—A sale of land, with a reservation to the vendor of the right
to repurchase, is not opposed to public policy.

RESERVATION OF RIGHT OF REPURCHASE.—To convert an absolute deed
into a mortgage, something more must be shown than a reservation of the
right to repurchase.

NO MORTGAGE WITHOUT DEBT.—The existence of a debt—an obligation
to pay money—is essential to the existence of a mortgage.

CLAIM OF LAND.—One in possession of public land, sufficiently describes
the same in a power of attorney, by calling it his claim of land.

APPEAL from the District Court, Fourth Judicial District,
City and County of San Francisco.

William R. Storms was in the possession of two thousand
acres of public land at Round Valley, Mendocino County,
and gave to S. P. Storms a power of attorney, of which the
following is a copy:

"ROUND VALLEY, 7th Oct., 1859.

"Know all men by these presents, that I, Wm. R. Storms,
of Boston, County of Suffolk, State of Massachusetts, have
made, constituted, and appointed, and by these presents do
make, constitute, and appoint S. P. Storms, of Round Valley,
County of Mendocino, State of California, my true and lawful
attorney, for me, and in my name, place, and stead, to buy
and sell all kinds of stock that is on my ranch in said Round

Valley, or in the State of California; to buy and sell any claims of land in said valley or State; to buy or sell all kinds of merchandise, and to make contracts in any business that may occur to carry on my business in the State of California, giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in the whole State of California, as fully to all intents and purposes as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all my said attorney or his substitute shall lawfully do or cause to be done by virtue hereof."

On the 13th of December, 1860, the attorney in fact called upon defendant, Hotaling, and solicited a loan of five thousand dollars, and offered as security a mortgage on said land. Hotaling agreed to make the loan on the security, if his counsel approved of it; and Storms and Hotaling went to the office of his attorney, who advised that the power of attorney did not authorize S. P. Storms to negotiate a loan or execute a mortgage. Hotaling then declined to make the loan. S. P. Storms then offered to sell the land to Hotaling for five thousand dollars, and Hotaling accepted the proposition. S. P. Storms, as attorney in fact, then, on the 13th of December, 1860, executed to Hotaling a deed of the land, absolute on its face, and Hotaling paid him the five thousand dollars. Hotaling then executed to William R. Storms a bond, conditioned that if said Storms paid him five thousand dollars, with interest at three per cent per month one year from date, he would convey the land to him. The bond provided, that until the payment of the money, it should remain in the custody of Hotaling's attorney as an escrow, and that if Storms failed to pay the money, the bond should be delivered up to Hotaling to be canceled. Hotaling, at the same time, gave S. P. Storms a lease of the land for one year. At the end of the year Storms refused to deliver up

possession, and Hotaling recovered possession in an action for holding over contrary to the terms of the lease. In 1862 Wm. R. Storms, being indebted to the plaintiffs, executed to defendant Tevis a deed of the land in trust for the plaintiffs. The plaintiffs brought this action to have the deed to Hotaling canceled, and to obtain possession of the land, and a conveyance from Tevis, their trustee. Storms did not pay the five thousand dollars mentioned in the bond. Defendant, Hotaling, recovered judgment, and the plaintiffs appealed.

The other facts are stated in the opinion of the Court.

*James B. Townsend,* for Appellants.

The power did not authorize a sale of the land. The clause under which the power is claimed is that in relation to buying and selling "claims of land." The object of the power was to have his aforesaid business in California "carried on" during his absence from the State.

A power should be construed according to the intention of the parties. (Storey on Agency, Secs. 21, 65, 66, 68, 69, 71, 72, 83; *Lord* v. *Sherman,* 2 Cal. 499, 501; *Washburn* v. *Alden,* 5 Cal. 463; *Johnson* v. *Wright,* 6 Cal. 373; *Billings* v. *Morrow,* 7 Cal. 171; *Dupont* v. *Werthman,* 10 Cal. 354; *Ferreira* v. *Depew,* 17 How. Pr. N. Y. 418; *Lumbard* v. *Alrich,* 8 N. H. 34, 35; *Rossiter* v. *Rossiter,* 8 Wend. 494.)

The deed given to Hotaling, when viewed in the light of the circumstances which preceded and followed its execution, became in *fact* and in *law* a mortgage. (*Flagg* v. *Mann,* 2 Sumn. 535; *Kerr* v. *Gilmore,* 6 Watts, 405, 407; *Clark* v. *Henry,* 2 Cow. 327, 330, 331, 332; *Bright* v. *Wagle,* 3 Dana, 253; *Brown* v. *Dewey,* 1 Sandf. Ch. 61, 64; *Morris* v. *Exr. of Nixon,* 1 How. U. S. 118; *Tillson* v. *Moulton,* 23 Ill. 655, 656; *Wright* v. *Bates,* 13 Verm. 348; *Sears* v. *Dixon,* 33 Cal. 326; *Gay* v. *Hamilton,* 33 Cal. 686; *Pierce* v. *Robinson,* 13 Cal. 125, 133; *Cunningham* v. *Hawkins,* 27 Cal. 606; *Robinson* v. *Cropsey,* 6 Paige, 480; *Colwell* v. *Woods,* 3

Watts, 188, 196, 167; *Van Buren* v. *Olmstead*, 5 Paige, 9, 10; *Clark* v. *Henry*, 2 Cow. 324; *James* v. *Johnson*, 6 Johns. Ch. 417, 429; *Carey* v. *Rawson*, 8 Mass. 159; *Stocking* v. *Fairchild*, 5 Pick. 181; *Eaton* v. *Green*, 22 Pick. 526, 529; 4 Kent's Com. 142, 143; *Taylor* v. *Luther*, 2 Sumn. 232, 233.)

In a Court of equity an absolute deed, with a bond or agreement for a reconveyance, is treated as a mortgage. *Polhemus* v. *Trainer*, 30 Cal. 687; *Kerr* v. *Gilmore*, 6 Watts, 408; *Colwell* v. *Woods*, 3 Watts, 196; *Erskine* v. *Townsend*, 2 Mass. 494, 495; *Carey* v. *Rawson*, 8 Mass. 159; *Rice* v. *Rice*, 4 Pick. 349; *Newhall* v. *Burt*, 7 Pick. 157, 159; *Manlove* v. *Bale*, 2 Vern. 84; *Wharf* v. *Howell*, 5 Binn. 499.)

*McAllister & Bergin*, for Respondents.

The question whether a deed given under circumstances like those in this case was intended as a conditional sale or a mortgage is purely one of fact, and the finding of the Court thereon is conclusive.   (*Sears* v. *Dixon*, 33 Cal. 330.)

Where there is no debt and no loan, an agreement to re-sell will not change an absolute conveyance into a mortgage. (*Glover* v. *Payn*, 19 *Wend.* 521; *Rich* v. *Doane*, 35 Verm. 135; *Slowey* v. *McMurray*, 27 Mo. 113; *Williams* v. *Owens*, 5 Mylne & Cr. 303; *Hughes* v. *Sheaff*, 19 Iowa, 331.)

Although this transaction had its inception in a proposition to borrow money, yet there was, in fact, no loan of money. (*Pearson* v. *Seay*, 35 Alabama, 616; *Bodwell* v. *Webster*, 13 Pick.; *Flagg* v. *Mann*, 14 Pick. 477; *Johnson* v. *Clarke*, 5 Pike, 321; *King* v. *Kincey*, 1 Ired. Eq. 187; *McDonald* v. *McLeod*, Id. 221; *McLaurin* v. *Wright*, 2 Id. 94; *Kelly* v. *Bryan*, 6 Ired. Eq. 283; *Hickman* v. *Cantrell*, 9 Yerger, 172; *Lane* v. *Dickerson*, 10 Yerger, 373.)

By the Court, RHODES, C. J.:

Was the instrument which was executed by William R. Storms, by his attorney in fact, S. F. Storms, to Hotaling, what it purported to be, an absolute conveyance of the premises in controversy, or was it a mortgage? The Court below found it to be the former, and the evidence was amply sufficient to justify the finding. The parties consulted the legal adviser of Hotaling, and by him they were informed that the letter of attorney did not empower the attorney in fact to execute a mortgage. Thereupon a proposition was made by one party, and accepted by the other, for a sale of the premises, and the deed and the other papers relating to the transaction between the parties were prepared and executed under the supervision of the same counsel; and in giving his testimony he says: "The parties gave me positive instructions to have it a sale, and not a mortgage, and if those papers make it anything else, then the papers did not perform the object of the parties and their transaction." The attorney in fact manifested some annoyance when informed that the power of attorney did not authorize him to execute a mortgage, and he suggested a sale, and the papers were drawn with that object. There can be no question, from the evidence, that the counsel who prepared the deed and the other papers relating to the transaction, understood from the parties that they desired a sale of the premises, and that they were prepared and executed under his direction, in the manner stated in the evidence, with the intent that the transaction should not, by construction, be held to amount to a mortgage.

When the intention of the parties to a deed, absolute in form, is sought to be ascertained, not in the usual way, by reading and construing the instrument, in connection with evidence to identify the subject matter, the parties, etc., but by evidence to establish an equity beyond and outside of the

deed, and thus to convert the deed into a mortgage, the evidence ought to be so clear as to leave no doubt that the real intention of the parties was to execute a mortgage, otherwise the intention appearing on the face of the deed ought to prevail. There can be no question that a party may make a purchase of lands either in satisfaction of a precedent debt or for a consideration then paid, and may at the same time contract to reconvey the lands upon the payment of a certain sum, without any intention on the part of either party that the transaction should be, in effect, a mortgage. There is no absolute rule that the covenant to reconvey shall be regarded, either in law or equity, as a defeasance. The covenant to reconvey, it is true, may be one fact, taken in connection with other facts, going to show that the parties really intended the deed to operate as a mortgage, but standing alone, it is not sufficient to work that result. The owner of the lands may be willing to sell at the price agreed upon, and the purchaser may also be willing to give his vendor the right to repurchase upon specified terms; and if such appears to be the intention of the parties, it is not the duty of the Court to attribute to them a different intention. Such a contract is not opposed to public policy, nor is it in any sense illegal; and Courts would depart from the line of their duties should they, in disregard of the real intention of the parties, declare it to be a mortgage. "To deny the power of two individuals," says Chief Justice Marshall, "capable of acting for themselves, to make a contract for the purchase and sale of lands defeasible by the payment of money at a future day; or, in other words, to make a sale with a reservation to the vendor, of the right to repurchase the same land, at a fixed price and at a specified time, would be to transfer to the Court of Chancery, in a considerable degree, the guardianship of adults as well as infants." (*Conway's Executors* v. *Alexander*, 7 Cranch. 237.)

Conceding to parties the right to contract in that manner,

it necessarily follows that something more than a reservation of the right to repurchase, or a covenant to reconvey, must be shown, in order to convert an absolute deed into a mortgage. There is one fact which is indispensable for this purpose. A mortgage is a security for the performance of an agreement, which is usually to pay a sum of money. Leaving out of view other agreements than those for the payment of money, it is essential that there be an agreement, either express or implied, on the part of the mortgagor, or some one in whose behalf he executes the mortgage, to pay to the mortgagee a sum of money. If there is no debt there is no mortgage. We look in vain, in this case, to find any evidence of a promise on the part of Storms to repay the purchase money, or of the existence of a debt of any kind from him to Hotaling. The arrangement was, that Hotaling should execute a bond to reconvey the premises; but Storms did not agree to repurchase, and the bond was delivered as an escrow, and it remained an escrow until after the time therein mentioned for the execution of the deed, and was then canceled. If the deed was intended as a mortgage, the mortgagee would have a right of action to foreclose the mortgage; but if he had brought such an action, the answer that there was no promise, either express or implied, on the part of the alleged mortgagor, to repay the purchase money, would have been a complete bar. This case differs from *Sears* v. *Dixon*, 33 Cal. 326, in the important particular, that in that case the mortgagor covenanted to repay the purchase money at a fixed time, and, under the name of rent, to pay interest thereon at a stipulated rate. And the Court also found that the parties intended to execute a mortgage; but in this case the Court found that the parties intended the deed to be, in fact, as it was in form, an absolute conveyance.

It is contended by the plaintiffs, that if the deed is held to be absolute, it is void, because it was executed by the

attorney in fact, without authority. The letter of attorney authorized him " to buy and sell any claims of land in said valley or State "—Round Valley or State of California—and it is insisted that the premises in controversy do not come within the general designation of " claims of land." It appears that at the time the contract was entered into, the " Storms ranch " was public land of the United States, and was in the possession of William R. Storms, his attorney in fact having the management of it. The term " claim " is more frequently used than any other to describe such interest in a parcel of the public lands of the United States as the person in possession thereof holds. (See *Marshall* v. *Shafter*, 32 Cal. 191.) When a person has entered into possession of public lands, he describes the act by saying that he has taken up a claim; and a sale, abandonment, etc., is mentioned in common speech as a sale, abandonment, etc., of his claim; and· that term is employed in contracts in describing his interest in the lands, and the grantor conveys by that designation, as well his interest in the lands in his possession, as his demand for, or asserted right to, the lands in the possession of another.

Judgment affirmed.

Mr. Justice TEMPLE dissented; Mr. Justice SPRAGUE did not express an opinion.