[Civ. No. 245. Fourth Appellate District.—October 27, 1930.]

A. W. REYNOLDS et al., Appellants, v. J. F. HOOK et al., Respondents.

228

C. W. Benshoof and Daniel W. Brown for Appellants.

French & Moore and Joseph Seymour for Respondents.

WARMER, J., *pro tem.*—The transaction out of which this action arose might be stated as follows: In the year 1917 A. W. Reynolds was indebted to Hook Brothers in the sum of $27,000, for which he gave them a note secured by a

trust deed on the premises described in the complaint. In March, 1922, the principal and interest on the trust deed was due. Reynolds was unable to pay the same. One of the Hook Brothers notified him, Reynolds, that they would have to foreclose the trust deed. Peter Beatty was a son-in-law of A. W. Reynolds. Beatty, Reynolds and J. F. Hook, one of the Hook Brothers, began negotiations concerning said indebtedness. There was some friction between the Hook Brothers and Reynolds. W. W. Stewart was the trustee named in the Reynolds trust deed. Reynolds informed Stewart, the trustee, that he was to reconvey the real property, stating that they had made a new deal, and asked Stewart to sign a paper that Mr. Hook would bring to him. Mr. Hook, an hour or two later, brought a paper to Mr. Stewart, which Stewart signed, the same being a reconveyance of the property in the trust deed to Reynolds. However, it was the understanding by Hook, Beatty, Stewart and Reynolds, that the conveyance that was to be executed by Stewart was to have transferred the property to the Hook Brothers, and Reynolds agreed, according to the pleading, to execute a grant deed to said property to the Hook Brothers. This was never done. Prior to these negotiations of March, 1922, the Midvale Farms Company had been operating the real property here involved under a lease, Reynolds had instituted an action against the ranch company and Beatty was appointed receiver in that action and took charge of this particular property under said receivership. The Midvale Farms Company owed Reynolds about $3,000 rent. About, if not at the same time when the direction was given to Mr. Stewart to reconvey the said real property, and as a part of the same transaction, Hook Brothers executed a grant deed of said real property to Beatty, and placed the same, together with instructions, in escrow with the First National Bank of Riverside. The said instructions provided that the deed was to be delivered to Peter Beatty upon his paying into escrow $30,000, interest and taxes. The price of $30,000 had been arrived at in the negotiations between Hook Brothers, Beatty and Reynolds, by adding the sum of $27,000 principal indebtedness under the Reynolds' trust deed and the $3,000 indebtedness of the insolvent Midvale Farms Company. At or about the same time, and as a part of the same transaction, Peter Beatty and his wife executed

a grant deed to Reynolds to an undivided one-half interest in the real property. This deed, together with instructions, were placed in escrow in the same bank. The instructions provided for a delivery of the deed upon the payment of $12,500, together with interest thereon. Subsequent to the consummation of this deal Peter Beatty continued in possession of the property. About two years thereafter it was discovered by Hook Brothers that the real property had been conveyed to Reynolds instead of to the Hook Brothers. Beatty and J. H. Hook took the matter up with Reynolds and secured a quitclaim deed from Reynolds to the Hook Brothers. It is not contended that any adverse interests in said premises arose during said two years. At the same time Hook Brothers extended the term of Beatty's payment to October, 1928, and Beatty extended the term of payment for Reynolds to the same time. About the same time it became necessary to do some work on the well on said property, and the Hook Brothers agreed with Beatty to advance him enough money to pay for this pump and the installation thereof, and they agreed then that the interest on the $30,000 and $12,500 to Hook Brothers and Beatty, respectively, would not become due until the pump was installed. The pump was actually installed August 27, 1924.

Peter Beatty assigned his interest in the cause of action in this particular case to one M. L. Mapes, after the commencement of this action.

Beatty transferred all his right, title and interest in and to an action entitled A. W. Reynolds, sometimes known as Arzeno W. Reynolds, and Peter Beatty, Plaintiffs, vs. J. F. Hook and A. W. Hook etc. et al., Defendants, by assignment to M. L. Mapes.

Peter Beatty and Flora Beatty, his wife, conveyed by quitclaim deed the premises here in question to Maynard L. Mapes. Under the assignment and conveyance Maynard L. Mapes became the owner of all of the interest and title of Beatty that the court might allow him to be substituted in the action. (Code Civ. Proc., sec. 385; *Walker* v. *Felt*, 54 Cal. 386; *Douglas* v. *Moncur*, 19 Cal. App. 177 [124 Pac. 1053]; *Merced Bank* v. *Price*, 9 Cal. App. 177 [98 Pac. 383]; 123 Am. St. Rep. 299, note; 20 R. C. L. 686.)

█ It does not appear affirmatively that the court allowed the substitution of M. L. Mapes for Peter Beatty as

party plaintiff. However, the amended complaint was filed and answered. The condition of the record was called to the attention of the trial court by plaintiff offering in evidence the said assignment and said quitclaim deed. To such offer objection was duly made and ruling was reserved. Counsel have not called to our attention any action of the trial court on the reserved ruling and we have found none. However, both of the said instruments appear in the record as plaintiff's exhibits and the court must have considered the substitution allowed, for in its judgment it ordered judgment in favor of the defendants and against the plaintiffs for costs. While the record is not clear or satisfactory, we think it sufficient to hold that the court allowed the substitution of M. L. Mapes for Peter Beatty as party plaintiff.

Appellants urge a number of claims that the evidence is insufficient to support the findings; that the deed from Reynolds to Hook Brothers was given as security for the payment of the $27,000 theretofore secured by the trust deed to the property which had been reconveyed. Were the premises conveyed to Hook Brothers as security for a debt, and therefore did the deed constitute an equitable mortgage, or was the instrument what it purported to be on its face, a conveyance of title in fee? ▉ On appeal all evidence tending to sustain the findings must be accepted as true, together with all the reasonable inferences that may be drawn therefrom. (*Bancroft-Whitney* v. *McHugh,* 166 Cal. 140 [134 Pac. 1157] ; *Hind* v. *Oriental Products Co.,* 195 Cal. 655 [235 Pac. 438] ; *Delannoy* v. *Quetu,* 73 Cal. App. 627 [239 Pac. 71].)

The complaint alleges in part that the plaintiff A. W. Reynolds, in consideration of said note being canceled, the title to said land being reconveyed, and other considerations therein mentioned, was to execute and deliver to Hook Brothers a grant deed to said land, in the place and stead of said trust deed, as security for said indebtedness. The answer alleges in part a mistake on the part of the trustee named in said trust deed, in reconveying the property to Reynolds, the trustor in said trust deed, and then alleges as follows: "That in order to rectify said mistake, said A. W. Reynolds agreed to execute and deliver to said J. F. Hook and A. W. Hook a grant deed to the said premises inad-

vertently reconveyed to said A. W. Reynolds by said Trustee W. W. Stewart as aforesaid."

The court finds that the said A. W. Reynolds agreed to execute and deliver to said J. F. Hook and J. W. Hook a grant deed to said premises inadvertently conveyed to said Reynolds by said trustee W. W. Stewart as aforesaid. There is evidence that Hook Brothers knew nothing of the fact that the reconveyance was made to A. W. Reynolds for approximately two years thereafter, at which time negotiations were begun that resulted in the execution and delivery of a quitclaim deed from Reynolds to Hook Brothers of the said premises. Whether or not Reynolds and Hook Brothers agreed that the trustee, W. W. Stewart, should convey the premises to Hook Brothers, and by proper instrument authorized him so to do, or whether the trustee, W. W. Stewart, was to reconvey the property in usual form to Reynolds, the trustor, and Reynolds was to convey the premises to Hook Brothers is immaterial, being only the plan or method for accomplishing the result—when no intervening rights are claimed.

If the original contract had been fulfilled by Reynolds, as well as by the others who were parties thereto, would it have created an equitable mortgage instead of a conveyance absolute? If so, then an equitable mortgage was created by the agreement in the manner in which it was carried out as between the parties thereto, and no one gained any right or lost any right by the failure of Reynolds to immediately deliver a deed as agreed.

"Every transfer of an interest in property other than in trust, made only as security for the performance of another act, is to be deemed a mortgage," etc. (Civ. Code, sec. 2924.)

"The fact that a transfer was made subject to a defeasance on a condition may, for the purpose of showing such transfer to be a mortgage, be proved (except as against a subsequent purchaser or an incumbrancer for value and without notice), though the fact does not appear by the instrument." (Civ. Code, sec. 2925.)

That a deed absolute on its face is in fact intended to be a mortgage and is a mortgage, if intended as security for a debt, is a rule recognized in California, and finds support in numerous decisions. (17 Cal. Jur. 737, and cases

there cited; *Boal* v. *Gassen,* 178 Cal. 132 [172 Pac. 588]; *Lamberson* v. *Bashore,* 167 Cal. 387 [139 Pac. 817]; *Shirey* v. *All Night and Day Bank,* 166 Cal. 50 [134 Pac. 1001].) The evidence is required to be clear and convincing to justify a court in finding that a deed which purports to convey land in fee simple was intended to be a mortgage. (*Beckman* v. *Waters,* 161 Cal. 581 [119 Pac. 922]; *Lynch* v. *Lynch,* 22 Cal. App. 653 [135 Pac. 1101].)

In *Couts* v. *Winston,* 153 Cal. 686 [96 Pac. 357], the court uses the following language: "If, therefore, the evidence offered by plaintiffs, taken by itself, was sufficiently 'clear, satisfactory and convincing' to satisfy the trial court that the deal was in fact a mortgage, the finding made cannot be overthrown merely because numerous witnesses whose character is not impeached, gave testimony to the contrary effect."

In *Wadleigh* v. *Phelps,* 149 Cal. 627, 637 [87 Pac. 93, 98], the court said: "The appellate court . . . will not disturb the finding of the trial court to the effect that the deed is a mortgage where there is substantial evidence warranting a clear and satisfactory conviction to that effect. All questions as to preponderance and conflict of evidence are for the trial court."

In *Keese* v. *Beardsley,* 190 Cal. 465 [26 A. L. R. 1538, 213 Pac. 500], we find the following: "In dealing with a deed absolute given as security, we are not bound by the rule that writings cannot be contradicted by parol, and it is therefore permissible to establish the agreement of the grantor by his acquiescence in a statement made by or on behalf of the persons for whose security the obligation is given."

In *Boal* v. *Gassen,* 178 Cal. 132 [172 Pac. 588], the court said that "The continued existence of a debt is no doubt a circumstance tending to show that a conveyance is a mortgage."

Whether a deed, absolute in form, be a mortgage or not, is a mixed question of law and fact, to be determined from all the evidence, written and oral, and in determining it, all the facts and circumstances attending the transaction should be considered. (*Husheon* v. *Husheon,* 71 Cal. 407 [12 Pac. 410].)

The debt to secure which a deed is given, may be an antecedent debt, or one created at the time. One of the circumstances tending to show that a deed, absolute in form, is only a mortgage, is the fact when it appears that there is a great inequality between the value of the property conveyed and the price alleged to have been paid for it. (*Husheon* v. *Husheon, supra.*) In order to hold the conveyance to Hook Brothers to be an equitable mortgage, Beatty must in some way have the right of a redemptioner under the mortgage. Being a stranger to the trust deed and to the transaction, he could not be in the position of a redemptioner. No debt was subsisting as between Beatty and Hook Brothers that was in any way, even remotely, connected with the trust deed or later transaction with Beatty. There was no question of adequacy or inadequacy of the price paid. He, Beatty, was coming into a new obligation as between Beatty and Hook Brothers. He had given no title to Hook Brothers and Hook Brothers got no title, equitable or legal, from him. None of his debts to Hook Brothers, if any, were purported to be paid or affected by this transaction, either as to the past or the future. Reynolds agreed to convey (and later did convey) these premises to Hook Brothers, knowing that they had or were to enter into an agreement with Beatty, and under such agreement with Beatty, if the same was finally completed by Beatty, Hook Brothers would be bound to convey the title to said premises to Beatty. Further, Reynolds entered into an agreement with Beatty, whereby he was to get one-half of the same premises from Beatty, who, in turn, must get his title to be delivered to Reynolds from Hook Brothers. Reynolds agreed to convey to Hook Brothers, knowing that Hook Brothers intended to agree to sell to Beatty, and Reynolds bought from Beatty, knowing that Beatty was depending on the reconveyance from Hook Brothers for the title he agreed to convey to him, Reynolds.

If, under such circumstances, an equitable mortgage was created, as to Beatty, he could, by the payment of the $27,000 for the equitable mortgage thus created, secure the property which he agreed to pay $30,000 for, in the escrow. If an equitable mortgage was created as to Reynolds, he could rightfully demand a satisfaction of the mortgage by the Hook Brothers, by the payment of the $27,000 and interest.

Beatty could not get any title from Hook Brothers through his performance of his agreement with them, and hence could not deliver the deed to Reynolds which he had agreed to do. Under such circumstances Reynolds could bring an action against Beatty for the breach of a contract and failure to deliver title to the land that he himself had title to. All of these conditions are made possible because of the act of Reynolds himself in conveying said premises in fee absolute in form, that is, Reynolds conveyed to Hook Brothers by deed absolute in form, knowing Hook Brothers were to agree to sell to Beatty and Beatty relying upon the conveyance from Hook Brothers under the Reynolds deed, was to agree to, and did convey, a one-half interest in said premises to Reynolds himself.

In *Chapman* v. *Hicks*, 41 Cal. App. 158 [182 Pac. 336, 338], the court says: "The test of a mortgage is whether the relation of debtor and creditor continues so that there is a subsisting debt after the conveyance (citing cases); and where a deed absolute on its face is given to secure a debt, it will be held to be a mortgage even though the parties stipulate it shall be an absolute conveyance. (Citing *Hodgkins* v. *Wright*, 127 Cal. 688 [60 Pac. 431].) The intention of the parties must govern, and it matters not what particular form the transaction may take. If the deed is made for the purpose of securing the payment of a debt, it is a mortgage 'no matter how strong the language of the deed or any instrument accompanying it may be'." (Citing *Woods* v. *Jensen*, 130 Cal. 200 [62 Pac. 473].) See, also, *Locke* v. *Moulton*, 96 Cal. 21 [30 Pac. 957].

The facts above discussed were all alleged in the complaint, and it is claimed they constitute a pleading of an equitable mortgage, but with this contention we cannot agree for the reasons hereinbefore stated. The pleading not stating a cause of action for the declaration of an equitable mortgage, no finding is necessary.

We are aware that much criticism has been directed to the use of the demurrer. This cause certainly aptly illustrates the necessity for the use of such a pleading. If such a pleading had been used in this case undoubtedly the cause could and would have been tried in less time and upon a theory that both parties would have at least known. Where no demurrer has been interposed to a complaint, mere defects in the manner of stating the facts relied on cannot be

considered on appeal. The complaint must be sustained if a cause of action be stated, though defectively, notwithstanding the ambiguity and uncertainty that may exist there, and in aid of the judgment the complaint must receive as favorable an interpretation as its general scope will warrant. (*Fudicker* v. *East Riverside Irr. Dist.*, 109 Cal. 29 [41 Pac. 1024].) █ Taking the complaint by its four corners, we are of the opinion that it states a cause of action for an accounting. The record discloses that Hook Brothers executed a deed to Beatty and placed it in escrow, with instructions to deliver the same to him when certain payments were made, and in the event said payments were not made the said deed was to be returned to Hook Brothers; that certain crops from the ranch premises described in said deed were delivered to Hook Brothers by Beatty during the time Beatty farmed the premises himself. Also during that time Beatty sold some of the hay grown on the premises and gave Hook Brothers orders on the purchasers for the payment thereof. Further, Beatty leased the said premises with the consent of Hook Brothers. By the terms of said leases Beatty was to receive a portion of the crops and the tenants a portion; that Beatty directed a tenant to deliver his portion of the crops to Hook Brothers. The tenant did deliver the crops to Hook Brothers, as directed. Beatty kept no account of the quantity of hay or number or amount of orders· for the payment for hay that he delivered to Hook Brothers, and relied on the Hook Brothers to keep the account. The Hook Brothers admit receipt of some of said hay and of some of said orders, claiming the money received therefor was applied as payment on other indebtedness that Beatty owed them. █ In such circumstances Hook Brothers were the agents of Beatty for the sale of the hay and collection of the orders. They took the money so received by them and applied it on Beatty's indebtedness, if any, other than the indebtdness of this transaction. As agents for Beatty they were charged with utmost good faith and with the duty of accounting to him for the money received for the hay, and the money received for the orders given them. (*Allsop* v. *Joshua Hendy Machine Works*, 5 Cal. App. 228 [90 Pac. 39]; *Calmon* v. *Sarraille*, 142 Cal. 638 [76 Pac. 486].)

There is no evidence in the record to show how much Beatty owed Hook Brothers other than the sum arising in this transaction, or what was the value of the hay delivered to Hook Brothers or the value of the orders on the purchasers for the payments for hay that had been delivered to Hook Brothers. Yet Beatty was entitled to know what was received for said hay and on said orders delivered to Hook Brothers. What his other indebtedness consisted of and whether or not there was any balance that should have been applied on the indebtedness arising out of this transaction is not shown. Assuming, without deciding, that Hook Brothers had the right to apply the total sum received by them on some other indebtedness, if any, the record being silent on the amount received by them and the condition of Beatty's accounts, except the indebtedness shown in this transaction, there is no way to determine whether or not the payments called for in the escrow instructions had been made and an accounting by the Hook Brothers is necessary to determine that fact. In order to hold that the payment had not been made on the indebtedness arising out of this transaction, we would have to assume that the said hay and said orders that were delivered to Hook Brothers were in an amount less than enough to pay the account and the payments called for in this transaction, without evidence as to how much money Hook Brothers got from the said hay and said orders and without evidence to show how much or what they were to pay. In other words, to balance an account without knowledge of any of the charges or credits is impossible. An accounting was therefore necessary to determine the rights of the parties, and a finding should have been made to that effect. The evidence was insufficient to support the finding ''That by reason of the failure of said Peter Beatty to comply with the terms of said escrow agreement and of the said extension thereof, as aforesaid, said Peter Beatty, his successors and assigns forfeited all right, title and interest in, and under said escrow agreement and said extension agreement and all right, title and interest in and to the premises covered thereby, and that said J. F. Hook and A. W. Hook, or their successor in interest, are now the owners of said premises free and clear of any interest of said plaintiffs, or either of them.''

There are numerous other objections raised as to the sufficiency of certain findings and certain other errors are

claimed by the appellants, but inasmuch as we have found that an accounting is necessary and that an accounting must be taken and had to determine the rights of the parties, it is unnecessary to determine any of the other specifications of error.

Judgment reversed.

Marks, Acting P. J., and Barnard, J., concurred.