[Civ. No. 4007.   Fourth Dist.   Mar. 28, 1950.]

J. A. MEALY et al., Appellants, v. SUNLAND REFINING CORPORATION (a Corporation), Respondent.

H. A. Savage for Appellants.

Stammer & McKnight for Respondent.

BARNARD, P. J.—This is an action to have a deed declared to be a mortgage, for a reconveyance, and for an accounting. As a part of its business the defendant leased a large number of service stations and subleased them to operators who would sell its products. Its office was in Fresno, and one Olsen was its manager and one Kohler its credit manager. The plaintiffs owned four lots in Selma upon which they operated a service station and a small store. On August 20, 1938, they leased the property to the defendant with a rental based upon the amount of Sunland gasoline sold, with a guaranteed minimum of $50.18 per month. Under an arrangement between them, the plaintiffs continued to operate the business and to purchase gasoline from the defendant. Their business grew steadily worse and in July, 1940, they had come to the conclusion that they could not go on with it, and that they were "going to lose everything." At that time gasoline sales were running less than 1,000 gallons a month and netted them only $30 to $40 a month, part of the real property was mortgaged, two

attachments had been levied, taxes were delinquent, and they were unable to meet other bills. They had owed the defendant over $900 since 1938, and had never been able to reduce that debt. The defendant had brought suit and attached the property in April and had secured a judgment for $961.55 in May, 1940. Execution was issued and levied but the property had not yet been sold thereunder.

On July 23, 1940, the plaintiffs deeded the property to the defendant. The deed was absolute in form and was recorded on the same day. At defendant's request, the plaintiffs remained in possession for about a month. The defendant recorded a satisfaction of its judgment, made book entries showing the debt was paid, and stopped sending monthly bills. It also paid the mortgage, paid off a contract on the equipment, paid off an attachment levied by another creditor, and paid the delinquent and current taxes. These payments, with its own judgment, amounted to $3,163.91. On August 21, 1940, the defendant leased the property to one Mathews for three years. He took possession two or three days later, and the plaintiffs vacated the premises. On September 1, 1943, the defendant again leased the property to Mathews for five years.

While Mathews was unable to make any profit for a year or two, he built up the business so that sales of gasoline had increased to over 11,000 gallons in October, 1944. On October 24, 1944, more than four years after the deed was given, the plaintiffs appeared at the defendant's office in Fresno and served upon Mr. Kohler a written demand for a reconveyance of the property which stated that their deed was given as a mortgage and security for their debt; that they believed the debt was fully paid by the rents and profits which were to be applied thereon; and that they offered to pay the balance, if any. Mr. Kohler told them that he had no authority to act and would have to submit the matter to Mr. Olsen, who was in the East. Without waiting for a reply, this action was filed on the same day.

The first trial resulted in a judgment for the plaintiffs, but a new trial was granted because of the insufficiency of the evidence. On a second trial before a different judge the court found, among other things, that all of the parties intended the deed to constitute a complete and absolute conveyance of the property, subject only to incumbrances of record and the plaintiffs' right to repurchase the property within one year; that none of the parties intended the conveyance to be a mortgage or any form of security; and that the plaintiffs had not

exercised their right to repurchase the property within one year. Judgment was entered accordingly, a motion for new trial was denied, and the plaintiffs have appealed from the judgment. The main contentions here are "that the uncontradicted evidence shows that (this deed) was a mortgage, because given as security for a debt"; and that "in transactions between necessitous men and their creditors, courts of equity, . . . will compel the creditor to give back that which he has taken with unclean hands."

■ The law applicable to such a situation is well settled. The burden is upon the party so claiming to prove that a deed absolute in form was intended as a mortgage to secure a continuing debt. (*Gronenschild* v. *Ritzenthaler,* 81 Cal.App.2d 138 [183 P.2d 720].) There is a strong presumption that a deed is what it purports to be, which should prevail unless the evidence to the contrary is clear and convincing. (*Wehle* v. *Price,* 202 Cal. 394 [260 P. 878]; *Beeler* v. *American Trust Co.,* 24 Cal.2d 1 [147 P.2d 583]; *Deniz* v. *Ferraiz,* 91 Cal. App.2d 416 [205 P.2d 113].) ■ Whether or not the evidence offered to establish an intention to change the ostensible character of the instrument is clear and convincing is a question for the trial court. (*Beeler* v. *American Trust Co.,* 24 Cal.2d 1 [147 P.2d 583].) In that case, the court said:

"It is without doubt the law, as repeatedly declared in our decisions, that clear and convincing evidence is required to justify a court in finding that a deed which purports to convey land absolutely in fee simple was intended to be a mortgage. 'That a deed purporting on its face to convey the title absolutely may be shown by parol evidence to be something else—namely, a mortgage—is a striking exception to the general rule, and it has been universally held that the character of the instrument cannot be thus changed except upon clear and convincing evidence.' "

[3] The fact that a deed was taken subject to an option to repurchase, while a circumstance to be considered, is not in itself controlling. (*Robinson* v. *Barnard,* 5 Cal.App.2d 396 [42 P.2d 711]; *First Nat. T. & S. Bank* v. *Edmonds,* 28 Cal. App.2d 26 [81 P.2d 1052].) While the surrounding circumstances are to be considered, under all of the authorities, the controlling consideration is the intent of the parties and the secret intention of one party will not be effective to change the character of the transaction. (*Wehle* v. *Price,* 202 Cal. 394

[260 P. 878] ; *Deniz* v. *Ferraiz,* 91 Cal.App.2d 416 [205 P.2d 113].)

Mr. Kohler testified that a few days before July 23, 1940, he went to this service station in response to a call from Mr. Mealy; that Mealy referred to their attachment and said that he was financially involved and could not pay his debts which were beginning to close in on him; that he was just "sunk" and that he wanted to make a proposition regarding the station; that Mealy then stated "that he would deed us the property in payment of our account, if we would take care of the mortgage that was on the lots, and also take care of the payments" on a sales contract covering some of the equipment; that he told Mealy that they would accept his proposition in full payment of his account; that Mealy said he had discussed the matter with his wife and she approved; that at this first meeting Mealy asked whether, if they would deed the property, he would give them the privilege of repurchasing it within one year by paying up all moneys that the defendant might advance on the station, plus interest; that he told them he did not have that authority but would have to get it from Mr. Olsen; that he returned with the deed on July 23; that they then went to a notary, after picking up Mrs. Mealy, where the Mealys executed the deed; and that he then returned to his office where he told Mr. Olsen, as he had told him before, that he had verbally agreed that the Mealys should have one year in which to repurchase the property upon paying the defendant "all the money that was involved." Mr. Kohler further denied that he had at any time promised to give the plaintiffs a letter setting forth the terms of any oral agreement.

Mr. Olsen testified that the first he knew of this transaction was when Mr. Kohler told him "that Mr. Mealy had suggested that he give us a deed to the property in satisfaction of our judgment" upon the condition that they were to allow him to repurchase the property at any time within a year, by paying the amount due to the defendant plus any money it might pay in protecting the property or any of the equipment, plus interest at 7 per cent and expenses; that he agreed to this and had his attorneys prepare the deed; that when Kohler returned with the executed deed he told him to record it and ordered the proper entries to be made in the books cancelling the Mealy debt; and that a satisfaction of the judgment was "recorded in the court." He further testified that two or three days after the deed was given Mr. Mealy came to his office

and said he would like to get a letter confirming his understanding with Mr. Kohler in reference to the taking of the deed; that the matter of a letter had not been previously mentioned to him; that he told Mealy he would be glad to have such a letter prepared; that Mealy told him "his understanding was that he could repurchase it within a year. He had hopes he could raise the money to do so"; that on the same day he dictated a memorandum expressing, in layman's words, his understanding of the agreement; that he sent this to his attorneys and explained what was desired; that his attorneys prepared and returned to him a letter for this purpose, together with an acknowledgment that the statements in the letter "are correct"; that he expected Mealy to return for the letter and wanted this acknowledgment signed when the letter was delivered; that Mealy did not return and the letter remained in his files; and that he heard nothing further from Mealy prior to the filing of this action.

The memorandum prepared by Olsen, which was undated, stated:

"This will confirm Mr. Kohler's advice to the effect that in consideration of you and your wife deeding to us that certain real estate which we have covered by attachment, we in return will give you an option to repurchase said property from us at any time on or before May 1st 1941."

It further stated that the consideration for said repurchase would be "All of your indebtedness to us as of this date together with interest" and costs and expenses incurred in protecting defendant's title to the property. The letter prepared by the attorneys was addressed to Mr. Mealy, and dated July 29, 1940. It stated that the deed had been recorded and in consideration thereof the defendant's judgment had been satisfied. It then stated that in the event Mealy should wish to purchase the property on or before May 1, 1941, the defendant would be willing to sell it to him at a price which would reimburse it for the amount of the judgment with costs and attorneys' fees, and all money which the defendant might be obligated to expend to protect its title or to remove liens and incumbrances, plus interest at 7 per cent; that the consideration for this agreement was the cancellation of the present lease to the defendant and Mealy's agreement to immediately remove himself from the premises upon notice from the defendant; and that the letter was to confirm the fact that the parties

intended the deed as an absolute conveyance and that it had not been given for purposes of security.

Mr. Mealy testified that Kohler came to the station about a week before the deed was signed and suggested that he deed the property to the defendant. He testified that Kohler stated that this would be a protection to both parties; that they would pay off the mortgage and equipment liens; that they would rerent the station and credit the rentals received upon his debt and these bills; that "they agreed to pay the taxes and I could redeem the property at any time after that"; that he told Kohler he did not care about giving a deed; that Kohler told him they would give him a letter, signed by Olsen, agreeing to reconvey the property "any time that you pay us back the money we are out"; that he said he would be willing to do this and Kohler said he would go back to Fresno and get a deed; that Kohler returned with a deed about a week later but did not bring the letter; that he refused to sign the deed "until you produce the letter"; that Kohler said Olsen was out of town and he would get the letter signed and bring it down; that they went to his home and he asked his wife to sign the deed; that his wife called Kohler a "crooked snake" and refused to sign the deed; that he persuaded his wife to sign the deed because Kohler had promised a letter stating that they could redeem the property at any time; that they then executed and delivered the deed; and that Kohler said he would bring that letter down as soon as Olsen got back. He also testified that four or five days later he telephoned to Kohler who said that Olsen was out of town, and that on his return Kohler would bring the letter; that after the date of the deed he stayed on about a month as Kohler asked him to operate the station and see if he could find a renter for it, and that he never went to the defendant's office in Fresno at any time prior to October 24, 1944. However, he testified in his deposition that he was up there about five months after the deed was given, at which time Kohler told him he knew nothing about the letter.

Mrs. Mealy testified to the same effect about the execution of the deed. She testified that she refused to sign the deed without the letter; that Kohler said he would bring a letter in a day or two which would state "that they would run the station and credit us with what they took in, and after they had gotten enough collected, . . . they would redeem it back to us" and "we was to redeem the place at any time"; that she still asked for the letter and told Kohler she had no faith

in him; that her husband told her she better sign and she finally signed it; that about a month later she went to the defendant's office and inquired about the back taxes and asked about the letter that was promised; that she was given the figures of the back taxes which had been paid and was told that Kohler knew nothing about the letter; and that she never saw Kohler again until October 24, 1944. In her deposition, which was taken before a court reporter in October, 1944, Mrs. Mealy testified that just before the deed was signed Mr. Kohler promised to produce the letter "if we would sign the deed." After several evasive answers as to what the contents of the letter were to be, she was asked "Was there anything said about what was to be in the letter?" She replied, "No." A little later she was asked, with reference to this conversation with Mr. Kohler, "Did he tell you what the Sunland was going to do with the property if you deeded it to them?" She replied, "No, he didn't tell me." More than a month later, after discussing the matter with her attorney, she changed her answers to these two questions so that the first answer read: "Yes. He said the letter protected us—that we could redeem at any time if we paid them the difference between what they collected and what we owed, and when they collected enough to pay them off, they would deed our property back to us"; and the second answer read: "Yes. That they were going to operate it and credit us with the income."

In support of the claim that the evidence was insufficient the plaintiffs mainly rely on two writings as conclusively proving that Kohler had promised a letter in advance and that, after the deed was given, the debt continued to exist and the defendant still recognized that the plaintiffs were the owners of the property. It is first argued that the memo prepared by Olsen, as above referred to, discloses Kohler's previous promise to give a letter, and that it recognized that the debt still existed at that time because it refers to plaintiff's indebtedness "as of this date." This memo purports to confirm the fact that there had been a repurchase agreement, but not that a letter had previously been promised. It clearly refers to the agreement under which the deed had just been given and accepted, and it was obviously intended to refer to the time of that transaction which was thus to be confirmed. It was prepared by a layman and was intended to be neither final nor technically correct. It is further argued that the defendant, in the two leases later given to Mathews, recognized that the

plaintiffs still owned the property. These leases contained a statement to the effect that the lessor was holding under a lease from the owner of the premises, that this was a sublease, and that the lessee agreed to do nothing which would impair the rights of the lessor under the original lease. These leases were on printed forms, with this clause near the middle of two pages of fine print. There is evidence that the defendant leased a large number of stations, that practically all of these were leased from the owners of the land and subleased to an operator, and that the defendant mistakenly overlooked this clause in using its usual printed form for the Mathews leases. These two matters are a part of the surrounding circumstances and were properly presented for consideration, but they are not controlling.

The presumption is in favor of this deed, and there is substantial evidence to the same effect. The surrounding circumstances tend to support that conclusion. It hardly seems reasonable that the defendant would agree to give up its favorable position under its judgment and execution, to pay all bills and operate the station indefinitely for the benefit of the plaintiffs, and to allow them to "redeem" at any time in the future. While claiming to have been especially concerned in receiving a promised letter, and while claiming that the defendant repudiated that promise shortly after the deed was given, the plaintiffs did not again contact the defendant or take other action for more than four years. The credibility of the witnesses was for the trial court, and the plaintiffs' own testimony is quite suggestive in this regard. Under applicable rules it must be held that the evidence is sufficient to support the findings as to the intention of the parties, and that the conflicting evidence is not so clear and convincing as to justify a reversal.

It is further argued that the deed must be held to be a mortgage because of the disparity between the value of the property and the price paid by the defendant. Three witnesses for the plaintiffs testified that the property was worth between $6,000 and $7,000 at the time the deed was given. Three witnesses for the defendant gave it a value, at that time, of from $2,500 to $3,500. It appears, without conflict, that in accordance with its claimed agreement it cost the defendant $3,163.57. Under the conflicting evidence, it cannot be held there was any discrepancy which could be controlling. (*Wehle* v. *Price*, 202 Cal. 394 [260 P. 878].)

It is contended that the court erred in allowing parol evi-

dence to vary the terms of the leases from the defendant to Mathews. These leases provided for a rental of $10 a month, plus one cent a gallon for the gasoline sold. Evidence was received that the defendant waived the one cent per gallon provision, and that this rental was never paid. Aside from other considerations, the plaintiffs were interested in this matter only in the event of an accounting, and neither error nor prejudice appears. A further contention that four of the incidental findings were unsupported by the evidence is without merit.

A final contention is made with respect to the matter of laches, which was found as a conclusion by the court. In view of the other findings, and the evidence in support thereof, this matter is immaterial.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied April 10, 1950, and appellants' petition for a hearing by the Supreme Court was denied May 25, 1950.