**In the Matter of SAN FRANCISCO INDUSTRIAL PARK, INC., a corporation, Debtor.**

**No. 110102.**

United States District Court
N. D. California.

Nov. 12, 1969.

**272**

Dinkelspiel & Dinkelspiel, Husted, Pinney, Ogg & Caccia, Associate Counsel, San Francisco, Cal., for appellant.

McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for John Hancock Mutual Life Insurance Company.

OPINION AND ORDER ON PETITION FOR REVIEW

GERALD S. LEVIN, District Judge.

I

*Preliminary Statement*

Debtor filed on August 15, 1969, a petition for review of the order of Lynn J. Gillard, Referee in Bankruptcy, made and filed in this proceeding on July 9, 1969, providing as follows:

1. That John Hancock Mutual Life Insurance Company is, and at all times since June 21, 1966, was, the fee owner of land in the City and County of San Francisco, described as Parcels 2, 3 and 4 in the grant deed executed by debtor on April 18, 1966, delivered to Hancock on June 21, 1966, and recorded on the latter date;

2. That the debtor has no right, title or interest in said parcels and should immediately surrender possession of said parcels to Hancock;

3. That unpaid rent accruing on said parcels since the commencement of the proceeding on June 4, 1968, and all taxes on said parcels which have become delinquent on that date are allowed as administrative expenses of the proceeding;

4. That Hancock shall, within 15 days of the filing of the order, submit an itemized claim separately identifying the amounts it seeks as unpaid ground rent and delinquent taxes for the periods preceding the commencement of the proceeding, and other charges and reasonable attorneys' fees and interest.

The basic issue was embraced in the conclusions of law contained in the "Findings of Fact and Conclusions of Law" made by the Referee and filed in this proceeding on July 9, 1969, as follows:

"1. The Grant Deed executed by Debtor and delivered to Hancock on June 21, 1966, was an absolute conveyance to Hancock of all of Debtor's right, title and interest in the realty therein described.

"2. The sale-leaseback agreement between Debtor and Hancock was not intended by either party to be a mortgage or other security device and did not operate as such."

These conclusions are based upon the findings of fact contained in the aforesaid document which in the petition for review debtor claims to be erroneous.

## II

### Facts

The relevant facts are set forth in the Opinion of the Referee made and filed herein on June 6, 1969, as follows:

"In 1962 San Francisco Industrial Park, Inc., (herinafter [sic] "debtor") purchased thirteen acres of land in the vicinity of Third, Twenty-third and Iowa Streets in San Francisco. After some preliminary work in clearing existing structures the debtor was in need of approximately $4,000,000 to construct the industrial park it had in mind when it purchased the land. John Hancock Mutual Life Insurance Company (hereinafter "Hancock") offered a package deal consisting of the purchase of the land for $1,000,000, a leaseback of the land to the debtor, a commitment for construction loans of $3,000,000, and an option to the debtor to repurchase the land. The $1,-000,000 purchase price for the land included $250,000 for certain off-site improvements to be performed by debtor. The debtor accepted Hancock's propositition and the agreements executed by the parties provided for a sale of the land to Hancock for $1,000,000, a lease of the land by Hancock to debtor for a term of fifty years at an annual rental of $65,-000 (6½% on the $1,000,000 purchase price), with the option to renew for an additional twenty-five years at an annual rental of 5% of the market value of the land or $65,000, whichever should be greater, an option to debtor to repurchase the land for $1,-000,000 or for 75% of its fair market value at the time of the exercise of the option, whichever sum should be greater, the option to be exercisable only after the expiration of twenty-five years and to be thereafter exercisable for the total term of the lease. The agreements also provided for con-struction loans of up to $3,000,000, such sums to be advanced as progress payments in accordance with the terms of the agreement. Debtor realized a profit of $200,000 on the sale of the land to Hancock.  *  *  *

"Debtor defaulted in payments called for by the lease and notices of default were served upon it by Hancock on October 21, 1968. The breaches of the lease asserted in the notice of default were (1) a failure to pay from February 1, 1968 through October 1, 1968 the monthly rental payments called for by the lease, (2) real estate taxes due on December 10, 1967 and April 10, 1968, and (3) the filing of this Chapter XI petition on June 4, 1968.  *  *  *

"On November 15, 1968 debtor filed herein an application seeking an adjudication that the deed to Hancock was in fact a mortgage. Hancock responded to this application on November 21, 1968 and in addition sought affirmative relief in the form on [sic] an order directing the surrender of the premises to Hancock and for the amounts owing by debtor to Hancock under the agreements hereinabove referred to."

The record indicates that the land had a fair market value of approximately $2,000,000 at the time this transaction was entered into by the parties.

## III

### The Issue

Debtor contends that the transaction which appears on its face to be a sale and leaseback of land with an option to repurchase combined with a commitment to loan money, is in reality a mortgage transaction.

■■ It is within the power of this court to find that a transfer, which appears on its face to be a deed absolute, is in fact only a mortgage,[1] and there-

---

1. "Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage.  *  *  *" (Cal.Civ.Code § 2924).

"The fact that a transfer was made subject to defeasance on a condition, may, for the purpose of showing such transfer to be a mortgage, be proved (except as against a subsequent purchaser or incum-

fore passes no title to the subject property.[2] The Referee found the transaction in question to be what the documents embodying it called it—a sale and leaseback with option to repurchase—and not a mortgage.[3] It is the duty of this court to uphold the referee's findings of fact unless they are clearly erroneous. F.R.Civ.P., Rule 52(a). In re Freelove, 74 F.Supp. 666, 667 (S.D.Cal. 1947). Findings of a referee on conflicting evidence will not be disturbed unless clearly erroneous. In re McNay, 58 F.Supp. 960, 962 (S.D.Cal.1945).

The test of whether a deed absolute on its face is in reality a mortgage depends upon the intention of the parties at the time of the transaction. Henley v. Hotaling, 41 Cal. 22, 27 (1871). As the court said in Spataro v. Domenico, 96 Cal.App.2d 411, 412–413, 216 P.2d 32, 33 (1950):

"In determining whether a deed, absolute on its face, is a mortgage, the intention of the parties is controlling, and in the absence of any writing this intention is manifested by, and inferred from, all of the facts and circumstances of the transaction under which the deed was executed, taken in connection with the conduct of the parties after its execution. Morris v. Rickmeyer, 28 Cal.App.2d 253, 257, 82 P.2d 472; 17 Cal.Jur. § 45, p. 744."

In the instant case, all the facts and circumstances surrounding the transaction point to its being what it purports to be. Neither the Debtor nor John Hancock referred to the sale in terms of "loan" or "mortgage",[4] and the subsequent conduct of the parties was consistent with that reference. Both parties carried the transaction on their books as a sale and leaseback.[5]

Debtor contends that its president, C. J. Colligan, was seeking financing in the form of a loan, and that he had no desire to sell the subject property outright. Yet Colligan, an experienced real estate investor,[6] must have known that all the documents embodying the transaction called it a sale and leaseback, nowhere using the language of mortgage. Even if Colligan believed the transaction to be in form a security device, this alone would be insufficient to have the deed absolute declared a mortgage. The secret intention of one of the parties is insufficient to transmute the character of the transaction. To do so requires evidence of the intention of *both* parties that a deed absolute was meant to be a mortgage. Mealy v. Sunland Refining Corp., 96 Cal.App.2d 700, 703–704, 216 P.2d 59 (1950).

Debtor further claims that other factors surrounding the transaction are indicia of a security transaction rather than a conveyance of property. The disparity between the value of the property at the time of the transaction and the amount paid for it by John

brancer for value and without notice) though the fact does not appear by the terms of the instrument". (Cal.Civ.Code § 2925).

2. "Notwithstanding an agreement to the contrary, a lien, or a contract for a lien, transfers no title to the property subject to the lien" (Cal.Civ.Code § 2888). Moisant v. McPhee, 92 Cal. 76, 79, 28 P. 46 (1891).

3. See Referee's Findings of Fact, Finding 5.

4. See R.T. 96–97. C. J. Colligan, President of Debtor, claims to have called the transaction other than a sale in conversations with a deceased accountant of his firm, but the evidence is conflicting on this (R.T. 95).

5. R.T. 90, 101, 200. In correspondence Colligan referred to it as a sale (R.T. 93).

6. It should be noted that many of the equitable mortgage cases cited by Debtor in support of its position involved "sellers" with little or no business experience. See In re 716 Third Avenue Holding Corp., 340 F.2d 42 (2d Cir. 1964); In re Euclid Doan Co., 104 F.2d 712, 714 (6th Cir. 1939); Couts v. Winston, 153 Cal. 686, 96 P. 357 (1908); Husheon v. Husheon, 71 Cal. 407, 415, 12 P. 410 (1886); Sanchez v. Torquemada, 96 Cal.App.2d 26, 27, 214 P.2d 48 (1950); Davis v. Stewart, 53 Cal.App.2d 439, 127 P.2d 1014 (1942). The record indicates, however that Colligan had long experience in the field of business financing.

Hancock is relied upon primarily by Debtor. It is well settled that disparity between the purchase price of property and its value is a factor in finding the existence of a mortgage,[7] Lockhart v. J. H. McDougall Co., 190 Cal. 308, 310, 212 P. 1 (1923); Reynolds v. Hook, 109 Cal.App. 226, 234, 292 P. 1000 (1930), but such disparity is not itself dispositive. See Glasgow v. Andrews, 129 Cal. App.2d 660, 666, 277 P.2d 400 (1954); First Nat. Trust & Savings Bank v. Edmonds, 28 Cal.App.2d 26, 81 P.2d 1052 (1938). Debtor received additional consideration besides the $1,000,000 purchase price for the property, namely the value to it of an attractive rent under its lease and the right to repurchase the property under its option.[8]

Other cases cited by Debtor in support of its position turn on their facts and are distinguishable from the instant case. In several of these cases, the existence of a confidential relationship between the parties was a factor inducing the court to find transactions purporting to be in the form of deeds absolute to be mortgages instead. [9] Sanchez v. Torquemada, 96 Cal.App.2d 26, 27, 214 P.2d 48 (1950) ("mortgagees" were sister and brother-in-law of "mortgagor"); Couts v. Winston, 153 Cal. 686, 689, 96 P. 357 (1908) (defendant was plaintiff's sister); Husheon v. Husheon, 71 Cal. 407, 410, 12 P. 410 (1886) (defendant was plaintiff's brother).

■ A factor suggesting a loan rather than a sale is the inclusion in the transaction of an option granting to Debtor the privilege to repurchase at the sale price *or* seventy-five percent of the fair market value of the property at the time of repurchase, whichever was greater. Indeed, it is provided that if Debtor does not exercise its option, it need never repurchase the property at all. Thus, ultimately, Hancock might never receive from Debtor repayment of the amount advanced by it, which indicates a mortgage transaction was not contemplated.

The principal cases relied on by Debtor are inapposite. In re 716 Third Avenue Holding Corp., 340 F.2d 42 (2d Cir. 1964) involved a bankrupt's assignment of a leasehold interest with an option to repurchase within nine months and for the amount of the transaction plus interest. In an action in bankruptcy to have the lease declared null and void, or in the alternative, declared a mortgage, the referee found no underlying debt and hence no mortgage. The Court of Appeals reversed, noting first, that the assignment agreement required the assignee to account to the assignor for all profits made during the option period and, second, that the repurchase price for the leasehold was approximately the same amount as the money advanced to the debtor less amounts paid in indebtedness of the tenant. If a mortgage were not found, the debtor's right to repurchase would have been cut off. Here the lender had preferred to "disguise" a security transaction in order to avoid New York's mortgage recording tax of ½%.

In the instant case, however, the option to repurchase could not be exercised until the expiration of twenty-five years and therefore Debtor might repurchase the property for an amount significantly less than the purchase price when measured by today's dollars. If the instant transaction is considered a "loan", John Hancock, the lender, would not be repaid for many years or, if Debtor did not exercise its option, would not be repaid at all.

The other case relied on by Debtor, Beeler v. American Trust Co., 24 Cal.2d 1, 147 P.2d 583 (1944) involved an action to have a deed declared a mortgage.

---

7. See generally 33 Cal.Jur.2d, § 49, p. 462.

8. Obviously the fact that Debtor received less for the property than it thought the property to be worth, without more, means little. We know nothing about the desirability or marketability of the property, and certainly if Debtor had sold it outright for $1,000,000, it would not be able to complain today.

9. See generally 33 Cal.Jur.2d § 50, p. 463.

One Weiss owned land subject to a deed of trust held by American Trust Co. After Weiss defaulted, American served him with a foreclosure notice, but delayed in order to give him time to find a purchaser. Weiss then conveyed to Beeler, who assumed and agreed to pay the indebtedness.

After none of the indebtedness was paid, American Trust Co. served a notice of default on Weiss and Beeler. Beeler then met with the bank in order to get refinancing, and the bank proposed that Beeler deed the property to it and Beeler would then get a leaseback for one year and an option to repurchase the property during that period for the amount of the sale.

■ The court declared the deed to be a mortgage, but it relied heavily on conversations between the debtor and the bank which indicated that a loan was intended. Unlike the instant case, Beeler was merely changing the form of an underlying and pre-existing debt which was not fully discharged by the conveyance; no such independent indebtedness existed here between Debtor and John Hancock. If there is no indebtedness, express or implied, for which the conveyance is security, there can be no mortgage. Henley v. Hotaling, *supra,* 41 Cal. at 28; Spataro v. Domenico, *supra,* 96 Cal.App.2d at 413, 216 P.2d 32.[10]

■ The burden is upon the debtor to prove that the deed absolute in form was intended to be a mortgage. Mealy v. Sunland Refining Corp., 96 Cal.App.2d 700, 703, 216 P.2d 59 (1950) (citing Gronenschild v. Ritzenthaler, 81 Cal.App.2d 138, 183 P.2d 720). It is well settled that this can be done only upon clear and convincing evidence if the instrument in question makes no reference to a mortgage. Beeler v. American Trust Co., *supra,* 24 Cal.2d at 7, 147 P.2d 583; Henley v. Hotaling, *supra,* 41 Cal. at 27 (1871). There is a

strong presumption that a deed and lease with option to repurchase are what they purport to be. Shusett, Inc. v. Home Sav. & Loan Ass'n., 231 Cal.App. 2d 146, 151, 41 Cal.Rptr. 622 (1964).

■ In the opinion of the court, Debtor has not satisfied the burden of proving that the transaction between Debtor and Hancock was intended to be a security device. Far from being clear and convincing, the bulk of the evidence in this case supports the contention of John Hancock that the transaction was in fact, as well as in form, a sale and leaseback, and not a mortgage.

The sale and leaseback is a commercially acceptable device which affords significant advantages to both purchaser-lessor and seller-lessee.[11] As the Referee pointed out in his opinion, if this sale and leaseback is not valid, every such transaction could later be upset by a dissatisfied party.

The order of the Referee is affirmed.

---

10. See generally 33 Cal.Jur.2d § 44, p. 457.

11. See California Real Estate Sales Transactions, §§ 2.6, 4.41 (Cal.Cont.Ed. of the Bar [1967]); I. Kolb and H. Trimble, Jr., Real Estate Sale—Leaseback—A Basic Analysis, 6, 8 (Society of Industrial Realtors 1966).